710 So.2d 702 (1998)
THE OCEAN RITZ OF DAYTONA CONDOMINIUM, etc., Appellant,
v.
GGV ASSOCIATES, LTD, et al, Appellee.
No. 97-1576.
District Court of Appeal of Florida, Fifth District.
May 1, 1998.
Colleen A. Braden and Harry W. Carls of Taylor & Carls, P.A., Orlando, for Appellant The Ocean Ritz of Daytona Condominium Association, Inc.
G. Kenneth Norrie, of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for Appellee Gerken and Smith Architects, Designers and Consultants, Inc.
No Appearance for Appellee, GGV Associates, LTD.
HARRIS, Judge.
The issue herein is whether the economic loss rule bars a negligence action in the context of a third-party beneficiary of a professional consultant's contract when the plaintiff is seeking to recover only economic losses. Appellant, a condominium association acting on behalf of the unit owners, sued the developer, the engineering company employed by the developer, and appellee, a consulting professional (an architectural firm) employed by the engineering company, for economic damages resulting from the faulty conversion of an apartment complex into a condominium project. Appellee's liability is based on its alleged faulty inspection and inaccurate disclosure and report prepared pursuant to its contract with the engineering company but which was intended to meet the developer's obligation under section 718.616, Florida Statutes, and which was intended to inure to the benefit of the condominium purchasers. The trial court granted summary judgment in favor of the consultant, holding *703 that the association's negligence action was barred by the economic loss rule.
At least for the purpose of this appeal, the consultant admits that it knew that its report would be provided to the ultimate condominium purchasers and that they would rely on it. Therefore, for the purpose of the summary judgment and this appeal, there is little distinction between this architectural consultant who prepared an alleged inaccurate report for submission to third parties who relied on it to their disadvantage and abstractors,[1] attorneys,[2] and accountants[3] who prepare reports for reliance by third parties and are thus held accountable for damages resulting from faulty performance.
The question before us is whether such professional's liability, since Florida Power and Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla.1987), is in tort (negligence) or in contract. In First Florida Bank v. Max Mitchell & Co., 558 So.2d 9 (Fla.1990), our supreme court held that a negligence action could be stated against an accountant who personally delivered to the bank the financial statement prepared by him for a client and urged the bank to make a loan to his client on the basis of his report. It appears that the court in Mitchell considered only the question of whether a lack of privity would bar a negligence action in a third-party context and not the applicability of the economic loss exclusive remedy issue.[4] In finding that a negligence cause of action exists, the court adopted the reasoning of section 552, Restatement (Second) of Torts ( 1976), but also relied on First American Title Insurance Co. Inc. v. First Title Service Company of the Florida Keys, Inc., 457 So.2d 467 (Fla.1984), which imposed a negligence liability on an abstractor based on third-party contract principles:
Although we decline to recognize an abstractor's liability in tort for negligence to any and all foreseeable injured parties, we hold that the plaintiff here stated a cause of action as a third-party beneficiary of the contract of employment of the abstractor.
Indeed, section 552 of the Restatement adopted by Mitchell relies on the same thirdparty beneficiary analysis made by First American Title in limiting liability to those whom the professional knows will receive his report and rely on it. Although the remedy of choice for these third-party claimants, at least prior to Westinghouse, was in negligence, does not the injured party have both a breach of third-party contract action and a negligence action? The third-party beneficiary rule eliminates the need for privity and permits the beneficiary to maintain an action for breach of the contract. Warren v. Monahan Beaches Jewelry Center, Inc., 548 So.2d 870 (Fla. 1st DCA 1989). If such party has both causes of action available to him, and if he is seeking only economic losses, why then, under Westinghouse, is not his negligence action barred by the economic loss rule? Westinghouse involved the attempt to sue not only for breach of contract but also in tort for the negligent performance of Westinghouse's professional duty to design and manufacture a nuclear steam supply system. Even though Florida Power could state a cause of action in negligence in addition to its contract claim, because it was seeking only economic losses, the court held that its contract remedy was more appropriate and barred the negligence action. Does it matter that the injured party is a third-party beneficiary of the contract as opposed to a signatory? Is it important that Mitchell was supplying professional accounting services while Westinghouse was supplying professional design *704 services? Mitchell does not discuss the impact of Westinghouse on the bank's choice of remedies.[5]
The Third District Court relied on Mitchell in holding in Bay Garden Manor Condominium Assoc., Inc. v. James D. Marks Assoc., Inc. 576 So.2d 744 (Fla. 3d DCA 1991), that an engineering firm could be sued in negligence for the faulty performance of its contract with the developer. This case also involved the conversion of an apartment complex into a condominium project which caused injury to the ultimate purchasers who relied on the professional's disclosure and report. The Bay Manor court, although recognizing that the lower court had granted summary judgment on the basis of the economic loss rule, limited its analysis of Mitchell to the privity issue and determined that theMitchell holding should not be limited to accountants. But the court did not discuss the fact that the plaintiff therein would also have a third-party beneficiary action against the professional, or why the economic loss rule should not bar the negligence action.
The trial court herein questioned the continued validity of Bay Manor. But the question is as much the scope of Bay Manor as is its continued validity. Sandarac Assoc., Inc. v. W.R. Frizzell Architects, Inc., 609 So.2d 1349 (Fla. 2d DCA 1992), another case involving a homeowner association and one performing architect/engineering services, did consider the economic loss issue and upheld the applicability of the economic loss rule. The court stated:
We conclude, however, that the plaintiff has not established a legal justification in this case to authorize a judicial expansion of negligence law to protect these purely economic expectations arising from the relationship between a condominium association and the parties responsible for the construction of the condominium. We have come to this conclusion after a thorough review of Florida Power & Light, AFM, and East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In light of the remedies available to the parties in such a relationship under contract, warranty, and statutory law, these specific circumstances do not warrant the creation of an exception to the traditional common law rule which limits the interests protected by negligence law to interests involving bodily injury and property damage.
Sandarac grounded its analysis on the principle that negligence law is simply not intended to protect economic expectations in the absence of bodily injury or property damages, rather than on a third-party beneficiary standing, and is consistent with Casa Clara Condominium Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993).[6]Casa Clara only responded to "[t]he issue is whether a homeowner can recover for purely economic losses from a concrete supplier under a negligence theory." (Emphasis added). Casa Clara, 620 So.2d at 1245. Casa Clara did not consider whether Charley Toppino & Sons, Inc., who supplied concrete for the construction of a condominium knowing that concrete would become a part of units which ultimately would be purchased by residential consumers, had a duty to the homeowners under a third-party beneficiary context. It was unnecessary to make that determination because the homeowners were not suing under a third-party beneficiary contract theory. We suspect, however, that if one of the homeowners had fallen *705 from a balcony which failed because of the defective concrete, a duty would have been found based on section 552 of the Restatement and an analysis of First American Title. Although it may be that a concrete supplier would be treated differently from a supplier of professional services, Casa Clara does not foreclose the possibility that a thirdparty contract claim might be appropriate under the facts of our case. In other words, the economic loss rule does not limit the number of potential defendants subject to a contract claim; it merely limits the causes of action that might be brought against them.
Appellant argues that the economic loss rule should not apply in third-party beneficiary cases because the key premise of the rule is lacking, i.e., a third-party beneficiary is not in a position to protect himself by contract because he is not involved in the negotiations. But the premise of the rule is simply that a contract action is more appropriate for recovering economic losses than is a negligence action. The justification for the rule is that negotiating parties are free to provide for such protection as they desire. But that doesn't mean that third-party beneficiaries are unprotected. The third-party beneficiary's action is based on his reliance that the party obligated by contract to deliver goods or services has adequately performed pursuant to the contract. In the case of "goods," there is an implied warranty that such goods are fit for the purpose intended by the contract. Section 672.315, Florida Statutes. And this implied warranty runs to third-party beneficiaries. Section 672.318, Florida Statutes. In the case of services rendered in expectation that non-negotiating third parties will rely on the accuracy of the product, the same implied warranty should apply. In fact, the finding of a duty under a section 552 or First American Title analysis presupposes such an implied warranty. If there is not an implied contractual obligation to provide services adequate to meet the "particular purpose" of the contract, then what is the basis for a reliance duty?
Finally, Appellant argues that the supreme court intended by H.T.P., Ltd., v. Lineas Aereas Costarricenses, S. A., 685 So.2d 1238 (1996), to permit tort actions any time a professional makes a "negligent misrepresentation" (negligent inducement) in his opinion or report. But why limit this reading of H.T.P. to professionals? If one is unable to meet his obligation to deliver wood on time, has he not "negligently misrepresented" his ability to do so? This interpretation of H.T.P., of course, would be the demise of the economic loss rule. If that was the intent of H.T.P., it would be better for the supreme court to drive that final coffin-nail.
AFFIRMED.
DAUKSCH and ANTOON, JJ., concur.
NOTES
[1] First American Title Insurance Co. v. First Title Service Co., 457 So.2d 467 (Fla.1984).
[2] Angel, Cohen & Rogovin v. Oberon Investment, N.V., 512 So.2d 192 (Fla.1987).
[3] Durham v. Palm Court, Inc., 558 So.2d 59 (Fla. 4th DCA), review dismissed 566 So.2d 256 (Fla. 1990).
[4] The issue of whether a duty may arise from a third-party relationship to justify a negligence action has independent significance even if the economic loss rule is considered. For example, assume a balcony fails because faulty design. If plaintiff seeks to recover his costs for replacing the balcony, his action is in contract. If, however, he seeks damages incurred when falling from the balcony, then negligence is his action. In that case, the duty on the part of the design professional, although it arises from a contractual setting, would justify a tort remedy.
[5] Was this because the economic loss rule was not raised in the certified question being considered by the court or because the court made a deliberate decision that the economic loss rule should not apply in third-party beneficiary cases? Since Westinghouse was not mentioned, the former seems more probable.
[6] But the supreme court in AFM Corp. v. Southern Bell Tel. & Tel, 515 So.2d 180, 181 (Fla. 1987), in applying Westinghouse, did discuss the significance of a third-party beneficiary having a contract right of action: "It would appear that our decision in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla.1973), is inconsistent with the above decisions. In that case, we did approve a recovery for economic losses where there was no personal injury or property damage upon a negligent tort theory. What distinguishes Moyer from the above cases, however, is that the plaintiff was not the beneficiary, either directly or as a third-party beneficiary, of the underlying contract ... Since there was no contract under which the general contractor could recover his loss, we concluded he did have a cause of action in tort." (Emphasis added.)