974 So.2d 1176 (2008)
VESTA CONSTRUCTION AND DESIGN, L.L.C., Appellant,
v.
LOTSPEICH & ASSOCIATES, INC. and Michael Howe, Appellees.
No. 5D07-754.
District Court of Appeal of Florida, Fifth District.
February 22, 2008.
*1177 Benjamin C. Iseman and Douglas C. Spears of Stump, Callahan, Dietrich & Spears, P.A., Orlando, for Appellant.
Rebecca C. Kibbe and Anthony P. Strasius of Wilson, Elser, Moskowitz, Edelman, Dicker LLP, Miami, for Appellee.
LAWSON, J.
Vesta Construction and Design, L.L.C., ("Vesta"), appeals the dismissal of its negligent misrepresentation claim against Michael Howe, an employee of Lotspeich & Associates, Inc., ("Lotspeich"), based upon Howe's alleged negligence in supplying information to Vesta while performing a contract between Vesta and Lotspeich. The trial court found that Vesta's tort claim against Howe was barred by the economic loss doctrine. Vesta argues: (1) that the economic loss doctrine does not apply because it had no contractual privity with Howe, only with his employer, Lotspeich; and (2) that claims for negligent misrepresentation are excepted from the economic loss rule altogether. We agree with the trial court that the economic loss rule bars Vesta's claim against Howe, and affirm.

Facts
In May 2002, Vesta contracted to buy a fifty-five acre parcel of land in Titusville, Florida, which Vesta intended to develop as a residential subdivision. The contract provided a due diligence period, allowing Vesta time to explore the feasibility of developing the land. In August, Vesta made an offer for thirty additional acres of land, contiguous to the first fifty-five acres, *1178 for wetlands mitigation and restoration in connection with its planned project.
As part of its due diligence, Vesta needed an environmental assessment to determine what portion of the land was developable, what portion consisted of wetlands, and how much land would have to be set aside for wetlands mitigation. Vesta contracted with Lotspeich to perform the environmental assessment. The contract required Lotspeich to provide its services in "a thorough, competent and professional manner," and further required Lotspeich's work to be "conducted in a manner consistent with the level of care and skill ordinarily exercised by members of the environmental consulting profession in the same locale and acting under similar circumstances and conditions." Howe is an ecologist who was employed by Lotspeich at the time. He was assigned as the employee primarily responsible for Lotspeich's performance of the Vesta contract.
Howe's preliminary assessment indicated that forty-two of the fifty-five acres were wetlands. Additionally, Howe indicated that $75,000.00 per acre would have to be spent for wetlands mitigation in order to develop the land. Relying on this information, Vesta cancelled its contract to purchase the fifty-five acre parcel, and revoked its offer for the additional thirty acres.
In early 2004, Vesta's president learned that the Titusville property had been developed by another buyer for single family residences. Curious, Vesta then obtained a copy of the environmental assessment done by Canaveral Engineering Group, ("Canaveral"), for the company that eventually developed the land. Canaveral's assessment included all of the land Lotspeich had assessed, plus some additional acreage.[1] Canaveral's study reported only twenty-two acres as wetlands and found seventy-five acres to be developable. Accordingly, the second developer proceeded with its project.
Vesta then hired another firm to re-inspect the land originally inspected by Lotspeich. This firm concluded that forty-six of the fifty-five acres Vesta previously planned to develop were developable; that three acres were marginal wetlands; and that fourteen acres were wetlands. Based upon these later surveys, Vesta concluded that Howe and Lotspeich had negligently assessed the land in 2002.
In 2006, Vesta sued Lotspeich and Howe, alleging that it was damaged when it chose to forego its planned development based upon Howe's report, and seeking "lost profits associated with the development of the property." Count I alleged a cause of action against Lotspeich for professional negligence. Count II stated a cause of action for breach of contract against Lotspeich. In count III, Vesta sued Howe personally for his alleged negligence.
Howe moved to dismiss count III of the complaint, arguing that the tort claim was barred by the economic loss rule. The lower court agreed, and dismissed the claim against Howe with prejudice. Vesta appealed, and argues that: (1) the economic loss rule does not apply to Howe because he was not a party to the contract between Vesta and Lotspeich, and employees can generally be sued personally for their own negligent actions taken during the scope and course of their duties as an employee; and (2) an exception to the economic loss rule for "negligent misrepresentations" should apply to the cause of action alleged. We will address each argument, in turn, after discussing the economic loss rule, in general. Because the sufficiency *1179 of the complaint is a question of law, our standard of review is de novo. Sobi v. Fairfield Resorts, Inc., 846 So.2d 1204, 1206-07 (Fla. 5th DCA 2003).

The Economic Loss Rule
"The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indemnity Ins. Co. of North Am. v. Am. Aviation, Inc., 891 So.2d 532, 536 n. 1 (Fla.2004) (also explaining that "[e]conomic losses are, simply put, disappointed economic expectations"). As explained in American Aviation, Florida courts have applied the economic loss rule in two different contexts. "The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." Id. at 536.
With respect to this context (which the Florida Supreme Court has labeled the "contractual privity economic loss rule"), the rule was developed "to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id. "Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process." Id. As our supreme court further explained:
A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.
Id. at 536-537.
The second context for application of the economic loss rule arises "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." Id. at 536. "In contrast to the contractual privity economic loss rule, which developed to protect the integrity of the contract, the products liability economic loss rule developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided for by warranty law." Id. at 537-38. In summary, only those in privity with a manufacturer were originally allowed to sue the manufacturer for damages proximately caused by its defective product. Courts later expanded manufacturers' potential liability by recognizing a cause of action in negligence for those who suffered personal injury or property damage proximately caused by a defective product, even if not in contractual privity with the manufacturer. See id. at 538-41; see also, Monroe v. Sarasota County School Bd., 746 So.2d 530, 534-37 (Fla. 2d DCA 1999). The products liability economic loss rule draws a line here, however, and does not generally allow a third party (not in privity with the tortfeasor) to recover against the manufacturer of a product when the product causes only economic losses. Am. Aviation, 891 So.2d at 538-41.
Because of the differing history, rationales and purposes of these separately developed doctrines, confusion often arises when one attempts to apply cases addressing the products liability economic loss rule to contractual privity cases, and vice versa. Here, of course, we are dealing with a contractual privity case.
*1180 The Contractual Privity Economic Loss Rule As Applied To Tort Claims Against Employees Of The Contracting Party
A corporate officer or employee is not liable for the torts of the company simply because of the person's position with the company. E.g., Orlovsky v. Solid Surf, Inc., 405 So.2d 1363, 1364 (Fla. 4th DCA 1981). However, "officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." White v. Wal-Mart Stores, Inc., 918 So.2d 357, 358 (Fla. 1st DCA 2005); see also, Fl. Specialty, Inc. v. H 2 Ology, Inc., 742 So.2d 523, 527 (Fla. 1st DCA 1999) ("agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment"). All that needs to be alleged is that the agent or officer personally participated in the tort, even if the complained of action was because of and entirely within the scope of his or her employment. Id. at 527-28.
No Florida court has expressly addressed the interplay between these general tort principles and the economic loss rule. Vesta very logically argues that: (1) Under general tort principles, Howe can be held individually liable for his own negligent conduct for actions undertaken on behalf of Lotspeich; and (2) Vesta had no contractual relationship with Howe, so that the economic loss rule cannot be applied to bar a negligence action against Howe personally, for his own misconduct. In support of this argument, Vesta cites McLeod v. Barber, 764 So.2d 790, 793 (Fla. 5th DCA 2000), which very generally states that "the economic loss doctrine does not apply to tort claims where there is no contractual relationship between the parties." Although this is a valid general observation relevant to the contractual privity economic loss rule, McLeod did not involve an attempt to sue an employee for negligent performance of a contract where the same cause of action would be barred (by the economic loss rule) against the employer who had contracted with the plaintiff. For two reasons, we hold that when suit is barred against a corporation by the contractual privity economic loss rule, the contracting party cannot bypass the rule by suing corporate employees for their negligent performance of the contract.
First, the policy reasons supporting the rule dictate this result. As previously explained, the whole reason for the economic loss rule in this context is "to protect the integrity of the contract." Am. Aviation, 891 So.2d at 538. As Justice Cantero further explained in his concurring opinion in American Aviation: "When parties can protect their economic interests through contract, it would only undermine contract and warranty law and produce economic inefficiency to allow purely economic recovery in tort." Id. at 544-45 (Cantero, J., concurring). Given that a corporation can only act through its employees, see, e.g. Romero v. State, 790 So.2d 468, 471 (Fla. 5th DCA 2001); Ratley v. Batchelor, 599 So.2d 1298, 1300 (Fla. 1st DCA 1992), it would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation.
Second, the rule that we have expressly stated here is unequivocally implied in other controlling cases. The clearest case is Moransais v. Heathman, 744 So.2d 973 (Fla. 1999). In Moransais, our supreme court considered the following question *1181 certified by the Second District to be of great importance:
WHEN THE ALLEGED DAMAGES ARE PURELY ECONOMIC, CAN THE PURCHASER OF A RESIDENCE, WHO CONTRACTS WITH AN ENGINEERING CORPORATION FOR A PRE-PURCHASE INSPECTION, MAINTAIN A PROFESSIONAL NEGLIGENCE ACTION AGAINST THE LICENSED ENGINEER WHO PERFORMED THE INSPECTION AS AN EMPLOYEE OF THE ENGINEERING CORPORATION?
Id. at 974.
In answering this question, the court held "that the economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved party has entered into a contract with the professional's employer." Id. at 983-84. The Moransais "exception" to the economic loss rule is limited to suits against individual "professionals," which our supreme court narrowly defined as a person engaged in a "`vocation requiring at a minimum a four-year college degree before licensing is possible in Florida.'"[2]Id. at 977 (quoting Garden v. Frier, 602 So.2d 1273, 1275 (Fla.1992)); see also, Am. Aviation, 891 So.2d at 537 (citing Moransais for the proposition that in "cases . . . alleging neglect in providing professional services [it has been] determined that public policy dictates that liability not be limited to the terms of the contract"); Crowell v. Morgan Stanley, Dean Witter Serv., Co., Inc., 87 F.Supp.2d 1287, 1292 (S.D.Fla. 2000) (noting that the Moransais economic loss rule exception is limited to professional negligence claims). Of course, there would have been no need for the court to have carved out an economic loss rule exception for suits against "a professional for his or her negligence . . . [when] the aggrieved party has entered into a contract with the professional's employer," 744 So.2d at 983-84, if the theory advanced by Vesta had any validity. Under Vesta's theory, the plaintiff in Moransais could have sued any employee of the engineering firm who helped perform the firm's contract, whether or not the employee was a "professional," based simply on a "lack of privity" with employees of the firm.
Therefore, we reject Vesta's "lack of privity" theory, and reiterate that when an aggrieved party is barred by the contractual privity economic loss rule from suing a corporation in tort, it cannot avoid the rule by suing non-professional employees for their alleged negligence in performing the contract on behalf of the corporation.

The Contractual Privity Economic Loss Rule As Applied To Claims For Negligent Misrepresentation
Citing American Aviation, Vesta argues that its negligent misrepresentation claim against Howe should not have been dismissed because "negligent misrepresentation" is a recognized "exception" to the economic loss rule. Although American Aviation does, in summary fashion, list negligent misrepresentation as an economic loss rule exception,[3] it is clear from a thorough review of Florida case law that not all negligent misrepresentation claims are excepted from the contractual privity economic loss rule. Rather, a distinction is drawn between misrepresentations that are directly related to the breaching party's performance of the contract and those which are independent of the contract (for example, a misrepresentation which induces the party to enter the contract). *1182 The economic loss rule exception applies only to the latter category of cases  those involving misrepresentations made "independent" of the contract. See, e.g., Taylor v. Maness, 941 So.2d 559, 564 (Fla. 3d DCA 2006) ("the Taylors cannot escape the economic loss rule in their negligent misrepresentation claim as the alleged negligent misrepresentation relates to the performance of the contract"); Allen v. Stephan Co., 784 So.2d 456, 457 (Fla. 4th DCA 2000) ("The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation . . . [i]f the fraud occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction. . . . However, where the fraud complained of relates to the performance of the contract, the economic loss doctrine will limit the parties to their contractual remedies.") (citations omitted); Wadlington v. Continental Med. Serv., Inc., 728 So.2d 352, 352 (Fla. 4th DCA 1999) (explaining that only those "negligent misrepresentation[s] [made] independent of the breach of contract are not barred by the economic loss rule."); Straub Capital Corp. v. L. Frank Chopin, P.A., 724 So.2d 577, 579 (Fla. 4th DCA 1999) (holding that "the economic loss rule bars the tenants' claim for negligent misrepresentation because, absent a tort independent of breach of contract, the remedy for economic loss lies in contract law," and explaining that the "action for negligent misrepresentation in the instant case was barred by the economic loss rule because the subject misrepresentations were directly related to the breaching party's performance under the subject lease agreement."). In this case, because Howe's alleged misrepresentations occurred during his performance of the contract on behalf of Lotspeich, the negligent misrepresentation exception to the contractual privity economic loss rule does not apply.
Additionally, we note that there is another "narrow exception to the economic loss rule which has been applied in certain limited circumstances" based upon section 552 of the Restatement (Second) of Torts.[4]Russell v. Sherwin-Williams Co., 767 So.2d 592, 593 (Fla. 4th DCA 2000). Section 552 provides:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
The "`rule announced by section 552 is not confined solely to the learned professions.'" Id. at 594 (quoting Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412, 419 (Fla. 3d DCA 1995) (Cope, J., concurring)). However, we find that the section 552 "exception" to the economic loss rule does not apply in contractual privity cases either.
Section 552 was adopted in Florida to define the limited circumstances under which those not in privity with a purveyor of information could nonetheless bring suit to recover its economic losses for information negligently supplied. See First Fla. *1183 Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla.1990) ("we have decided to adopt the rationale of section 552, Restatement (Second) of Torts (1976), as setting forth the circumstances under which accountants may be held liable in negligence to persons who are not in contractual privity.") (emphasis supplied). In adopting section 552, our supreme court in no way indicated that it intended to abolish the contractual privity economic loss rule for all contracts that call for the delivery of information. Rather, the court explained section 552 in terms of the "substantial erosion in Florida" of the contractual privity doctrine, which started with "cases involving injuries caused by negligently manufactured products." Id. at 13. In other words, the section 552 exception is best understood as an extension of the products liability economic loss rule line of cases. Both spring from the need to avoid unlimited liability for a party when abolishing the common law privity requirement, so as to allow an aggrieved party not in contractual privity with the alleged wrongdoer to recover losses caused by the wrongdoer under some circumstances.
However, if the section 552 exception were applied to contractual privity economic loss rule cases, the exception would completely "swallow the rule" for a large set of contracts  meaning that no one in the business of supplying information to others could ever allocate losses by contract. Given the policy reasons supporting the contractual privity economic rule, and the language used in adopting and discussing section 552 liability by Florida courts, we simply do not believe that our supreme court intended to deprive all purveyers of information of the ability to "allocate[ ] the economic risks of nonperformance through the [contractual] bargaining process,"[5] when it adopted section 552. For this reason, we hold that section 552 does not apply as an economic loss rule exception in contractual privity cases.[6] Rather, in contractual privity cases, the rule still stands that parties to a contract generally cannot sue one another in tort unless they establish a tort independent of the contract. E.g., AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180, 181-82 (Fla.1987).
For these reasons, we find that the trial court properly dismissed Vesta's tort claim against Howe.
AFFIRMED.
TORPY, J., and THOMPSON, E., Senior Judge, concur.
NOTES
[1] The total parcel of land owned by this developer was close to one-hundred acres.
[2] In this case, Vesta did not attempt to state a cause of action against Howe for professional negligence.
[3] See 891 So.2d at 543.
[4] "Section 552 of the Restatement, although commonly referred to as `negligent misrepresentation,' is actually entitled `Information Negligently Supplied for the Guidance of Others.'" Deloitte & Touche v. Gencor Indus., Inc., 929 So.2d 678, 681 (Fla. 5th DCA 2006). The elements of proof under section 552 of the Restatement differ from the elements of a negligent misrepresentation claim at common law. Compare Russell, 767 So.2d at 593 with Fla. Women's Med. Clinic, Inc. v. Sultan, 656 So.2d 931, 933 (Fla. 4th DCA 1995).
[5] Am. Aviation, 891 So.2d at 536.
[6] Vesta argues that our decision on this point is controlled by First State Savings Bank v. Albright & Associates of Ocala, Inc., 561 So.2d 1326 (Fla. 5th DCA 1990), disapproved in part, Garden v. Frier, 602 So.2d 1273 (Fla. 1992). However, Albright was not a contractual privity case. In Albright, a potential borrower had contracted with Albright and Associates, an appraisal firm, to produce a real estate appraisal for submission to First State Savings Bank in connection with the client's loan application. The bank relied upon the appraisal, and loaned millions of dollars to Albright's client. When the loan defaulted, the bank sued the appraisal firm and the appraiser, individually, for their allegedly inaccurate appraisal of the property. The bank was not in contractual privity with either the firm or the appraiser. Therefore, the contractual privity economic loss rule could not have been an issue in that case. However, our court did address a similar issue in The Ocean Ritz of Daytona Condominium v. GGV Associates, Ltd., 710 So.2d 702 (Fla. 5th DCA 1998). Consistent with our holding today, the panel in Ocean Ritz held that the a claim under section 552 was barred by the economic loss rule when the party could bring a contract cause of action as a third party beneficiary.