[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11730

Non-Argument Calendar

_____

ROGER MARTIN,

Plaintiff,

PR OVERSEAS BOATING, LTD,

Plaintiff-Appellant,

*versus*

QUICK SPA,
a.k.a. Quick USA, Inc.,
THE TALARIA COMPANY, LLC,
d.b.a. as The Hinckley Company,

Defendants-Appellees,

2                    Opinion of the Court                    22-11730

JOHN MILLER,

                                                      Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:19-cv-14153-JEM

_____

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

PR Overseas Boating, Ltd. ("PRO") appeals the district court's grant of summary judgment on its claims for breach of implied warranty of fitness for a particular purpose, negligent installation, and negligent misrepresentation, arising from the purchase and installation of a gyroscopic stabilization system on a 63-foot yacht. After careful review, we affirm the grant of summary judgment on PRO's negligence claims, but we vacate in part and remand for further proceedings on its implied-warranty claim.

**I.**

PRO owns a 63-foot yacht called the *Time Out*. In 2017, after the vessel was damaged in Hurricane Irma, PRO's owner, Roger Martin, brought the *Time Out* to a boatyard facility in Stuart, Florida, which The Talaria Company, LLC, doing business as The

Hinckley Company ("Hinckley"), operated.  Martin hired Seaport Yacht Services, Inc., ("Seaport") and its owner, Captain Christopher Leyden, to be PRO's agent and oversee the repairs.

While the *Time Out* was under repair, Martin asked Leyden to look into installing gyroscope stabilizers on the vessel with the goal of reducing the roll motions of the *Time Out*.  Leyden went to Randy Ward, Hinckley's representative, who suggested gyroscope stabilizers made by Quick S.p.A. ("Quick"), an Italian company, which were smaller than a competitor's product and could be installed in the engine room of the Time Out.  Ward also introduced Leyden to Jeff Spath from Quick USA, Inc., a Quick subsidiary.

Leyden traveled to Quick's facility in Italy and met with its representatives.  Leyden told Quick representatives he was concerned about installing the Quick system in the *Time Out*'s engine room because the gyroscopes were air-cooled and the drivers could get hot and cause the equipment to overheat.  The Quick gyroscopes were operated through a separate driver box, which is an electronic device that effectively serves as the "brain" of the equipment.  Quick's CEO, Michel Marzucco, assured Leyden that Quick had never had a problem with its air-cooled gyroscopes in the engine room on previous yachts, and other Quick representatives likewise reassured Leyden that his concerns were unfounded.  Leyden also raised the same issue "many times during installation" with both Spath and Ward.

After speaking with Leyden, Martin decided to have a Quick gyroscopic system installed in the *Time Out*.  Quick selected the

specific equipment used in the system based on information Hinckley provided. Leyden's company Seaport contracted with Hinckley for the purchase and installation of the stabilization equipment in the engine room of the *Time Out*. Martin and PRO advanced the necessary funds. Hinckley installed the Quick gyroscopic system with assistance from Quick. The *Time Out* project was Hinckley's "first Quick gyro installation," though it had installed other gyroscopic stabilizers.

At a boat show in November 2018, after the installation was completed, Martin permitted the *Time Out* to be displayed for an exhibition of the Quick gyroscopic system. When Quick's president saw the installation for the first time, he yelled obscenities and indicated the installation was incorrect. Then, during the first sea trial, the system overheated and shut down. Quick paid a contractor to install an air-conditioning unit in the engine room of the vessel, but the air-conditioning unit failed to prevent the gyroscopic system from overheating. Hinckley did not conduct any ventilation or temperature studies of the *Time Out*'s engine room until after the failed sea trial.

In October 2021, at a later sea trial, the gyro system failed at trolling or slow-speed operation, which is the speed for which the system was marketed. The gyroscopes spat out a dark gray granular foam debris that appeared to be insulation.

## II.

PRO sued, asserting three claims: (1) against Hinckley for breach of implied warranty of fitness for a particular purpose, *see*

Fla. Stat. § 672.315; (2) against Hinckley for negligent installation of the Quick gyroscopic system; and (3) against Quick for negligent misrepresentation.

The defendants moved for summary judgment on all claims. Hinckley argued that the implied-warranty claim failed because the Quick gyroscopic system was purchased and installed for its ordinary purpose—roll reduction or stabilization—and not a particular purpose. Hinckley also maintained that the negligent-installation claim was barred by Florida's economic loss rule as intertwined with PRO's warranty claim, and that Hinckley otherwise did not breach a duty owed to PRO. For its part, Quick argued that PRO's negligent-misrepresentation claim was not supported by the evidence and was barred by the economic loss rule.

PRO responded that Hinckley impliedly warranted that the Quick gyroscopic system would be fit for the particular purpose of providing stabilization in the *Time Out*'s engine room, and that Hinckley negligently installed the stabilization system by failing to perform a pre-installation ventilation study or to follow the installation manual. PRO further said that Quick made negligent misrepresentations about "the particular Gyro System and specific location where it was installed." Finally, PRO asserted that the economic loss rule did not bar its claims because it was an intended third-party beneficiary of the contract for the purchase and installation of the Quick gyroscopic system. PRO did not otherwise address the economic loss rule.

The district court entered summary judgment for the defendants. The court first found that, because PRO intended to use the Quick gyroscopic system for the ordinary purpose of stabilization, PRO failed to prove a "particular" purpose as a matter of law. And second, the court rejected PRO's claimed third-party beneficiary exception and concluded that Florida's economic loss rule barred PRO's negligence claims because the subject matter of those claims was "interwoven with the Warranty." PRO now appeals.

## III.

We review a district court's grant of summary judgment *de novo*. *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1026 (11th Cir. 2017). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(a).

## IV.

PRO seeks to hold Hinckley liable on a theory of implied warranty of fitness for a particular purpose. "[L]iability for breach of an implied warranty is based on the agreement, imposed by law, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended." *Papas v. Upjohn Co.*, 985 F.2d 516, 520 (11th Cir. 1993) (quotation marks omitted). An implied warranty of fitness arises "where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." *Royal*

*Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983); *see* Fla. Stat. § 672.315.

"Florida's U.C.C. distinguishes a 'particular purpose' from a use to which the goods are ordinarily put." *First New England Fin. Corp. v. Woffard*, 421 So. 2d 590, 597 n.10 (Fla. Dist. Ct. App. 1982); *see McLeod v. W.S. Merrell Co.*, 174 So. 2d 736, 738 (Fla. 1965). A "particular purpose" means "a specific use by the buyer which is peculiar to the nature of his business." *Royal Typewriter*, 719 F.2d at 1100. It does not include "uses which are customarily made of the goods in question," which are instead covered by the concept of merchantability. Fla. Stat. § 672.315, cmt. n.2. If the contemplated use of the good is the ordinary purpose for which the good is sold, no warranty of fitness for a particular purpose arises. *Royal Typewriter*, 719 F.2d at 1100. Nevertheless, whether an implied warranty arises is "a question of fact to be determined by the circumstances of the contracting," Fla. Stat. § 672.315, "focus[ing] on the relationship between the buyer and the seller," *D-I Davit Int'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 202 (Fla. Dist. Ct. App. 2022).

The district court ruled that PRO could not prove a "particular" purpose because it intended to use the Quick gyroscopic system for the ordinary purpose of stabilization. We agree to a degree that PRO intended that ordinary purpose. But our review of Florida caselaw indicates that PRO is not foreclosed from establishing a more "particular" purpose in the circumstances of this case.

In *Chrysler Corp. v. Miller*, for example, the plaintiff sought to recover for breach of implied warranty of fitness after the engines and outdrives specifically recommended by the defendant for the plaintiff's houseboat did nothing to fix the houseboat's power failures. 310 So. 2d 356, 357 (Fla. Dist. Ct. App. 1975). Nothing suggested an intended use for the propulsion system other than the ordinary one: propulsion. Nevertheless, the Florida appellate court affirmed the verdict for the plaintiff, explaining that the plaintiff "had the right to expect that this power system properly would propel his Gallen houseboat" when he purchased it based on the defendant's representations and advice. *Id.* Because the power system was not adequate to "propel plaintiff's houseboat properly," "through no fault of his, plaintiff was entitled to be redressed therefor." *Id.*

Similarly, in *Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of America, Inc.*, the plaintiff hospital sued for breach of express warranty and implied warranty of fitness for a particular purpose, alleging that two remote x-ray systems it purchased in reliance on the defendant's representations and inducements were unfit for the intended purpose of taking diagnostic x-rays. 444 So. 2d 1068, 1071–72 (Fla. Dist. Ct. App. 1984). Again, it appears the x-ray systems were purchased for their ordinary use: taking x-rays. Yet the Florida appellate court held that the plaintiff stated a claim for breach of an implied warranty of fitness based on various representations the defendant made, including that "the equipment was capable of handling the high volume hospital use for which it was needed." *Id.* at 1072.

To be sure, *Miller* and *Cedars of Lebanon* did not directly address the "particular purpose" issue. But their results are consistent with the principle that whether an implied warranty of fitness arises is "a question of fact to be determined by the circumstances of the contracting." Fla. Stat. § 672.315. In *Miller*, the plaintiff relied on the defendant's advice to purchase certain products to fix the power issues on his houseboat. In *Cedars of Lebanon*, the plaintiff relied on the defendant's representations that the x-ray systems were very high quality and capable of handling the hospital's demands. In both cases, the courts "focus[ed] on the relationship between the buyer and the seller," *Carpio*, 346 So. 3d at 202, including the sellers' tailored claims about product usage in a specific context. *See also First New England Fin. Corp. v. Woffard*, 421 So. 2d 590, 596 (Fla. Dist. Ct. App. 1982) ("Appellee has shown that the seller knew of appellee's particular purpose and that appellee was relying on the seller's judgment in choosing the best yacht for that purpose, i.e., crossing oceans as opposed to weekend lake sailing.").

PRO is in a position similar to that of the plaintiff in *Miller*. In the light most favorable to PRO, the evidence reflects PRO relied on Hinckley's skill and expertise to select a suitable stabilization system for the unique constraints posed by the *Time Out*, just as the plaintiff in *Miller* relied on the defendant's advice to purchase a propulsion system for his particular houseboat. Hinckley also was well aware of PRO's unique demands when it sold the Quick system. So PRO "had the right to expect that this [stabilization] system properly would" stabilize the *Time Out*. *See Miller*, 310 So. 2d at 357. Accordingly, we cannot say as a matter of law that the

evidence fails to support a "particular" purpose giving rise to an implied warranty of fitness. *See* Fla. Stat. § 672.315.

For these reasons, we vacate the grant of summary judgment on PRO's claim for breach of implied warranty of fitness for a particular purpose under Florida law. We express and imply no opinion about whether the evidence is otherwise sufficient to establish entitlement to relief on such a claim.

## V.

PRO also challenges the district court's conclusion that the economic loss rule barred its claims for negligent installation and negligent misrepresentation.

"[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses," without any claim of personal injury or property damage. *Tiara Condo. Ass'n, Inc. v. March & McLennan Cos., Inc.*, 110 So. 3d 399, 401–02 (Fla. 2013). The economic loss rule was "designed to prevent the application of tort remedies to traditional contract law damages." *Global Quest*, 849 F.3d at 1030. Nevertheless, Florida courts recognize several exceptions to this doctrine, including for "torts committed independently of the contract breach," such as certain fraud or negligent-misrepresentation claims. *Tiara Condo.*, 110 So. 3d at 402; *see Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1181–82 (Fla. Dist. Ct. App. 2008).

Before the district court, the defendants sought summary judgment on the negligence claims on the ground that Florida's

economic loss rule as intertwined with and therefore subsumed by any warranty claim barred them. PRO's response in opposition to these arguments did not contend that the negligence claims fell within the exception for independent torts. *Tiara Condo.*, 110 So. 3d at 402. Instead, PRO relied solely on a purported exception to the economic loss rule for third-party beneficiaries. On appeal, however, PRO relies on both purported exceptions. We address each in turn.

## A.

Put simply, there is no exception to the economic loss rule for third-party beneficiaries, as the district court correctly explained. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 543 (Fla. 2004) (listing the recognized exceptions to the economic loss rule), *abrogated on other grounds by Tiara Condo.*, 110 So. 3d 399. None of the cases PRO cites stand for that proposition. Rather, the cited cases simply outline when a third party can satisfy the privity requirement and enforce the terms of a contract. *See, e.g.*, *Merino v. Ethicon Inc.*, 536 F. Supp. 3d 1271, 1286 (S.D. Fla. 2021); *Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1318–19 (S.D. Fla. 2016). No one here disputes that PRO was an intended third-party beneficiary of the contract for the Quick gyroscopic system on the *Time Out*.

But that fact is not material because the application of the products-liability economic loss rule does not depend on privity. *See Am. Aviation*, 891 So. 2d at 541 ("[T]he products liability economic loss rule . . . applies even in the absence of privity of

contract."). "[T]he premise of the rule is simply that a contract action is more appropriate for recovering economic losses than is a negligence action." *Ocean Ritz of Daytona Condo. v. GGV Assocs., Ltd.*, 710 So. 2d 702, 705 (Fla. Dist. Ct. App. 1998). PRO fails to offer any supporting reasoning for its view that third-party beneficiaries should be excluded from the rule's reach. *See id.* (rejecting a third-party beneficiary exception to the economic loss rule). Accordingly, the district court correctly rejected the sole argument PRO raised below regarding the economic loss rule.

## B.

For the first time on appeal, PRO contends that its negligent-misrepresentation claim falls within the exception for "torts committed independently of the contract breach." *Tiara Condo.*, 110 So. 3d at 402. PRO also asserts that the economic loss rule does not apply to the negligent-installation claim because it "sought damages for 'consequential' damages" in the operative pleading. Hinckley responds that these arguments were not properly raised below and should not be considered on appeal.

"[I]ssues raised for the first time on appeal are generally forfeited because the district court did not have the opportunity to consider them." *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015); *see Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court."). Nonetheless, we may choose to consider a forfeited argument on appeal in certain rare circumstances. *Access Now. Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir.

2004). Those circumstances include when the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice, or when the proper resolution is beyond any doubt. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (*en banc*).

In our view, no exceptional circumstances are present here. PRO's new reliance on the exception for independent torts does not present a "pure question of law," nor is the proper resolution of the issue beyond doubt. In applying the independent-torts exception, Florida courts have drawn a distinction "between misrepresentations that are directly related to the breaching party's performance of the contract and those which are independent of the contract (for example, a misrepresentation which induces the party to enter the contract)." *Vesta Constr. & Design*, 974 So. 2d at 1181; *see Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. Dist. Ct. App. 1997) (stating that "where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule applies," even if the representations were precontractual).

Whether the alleged misrepresentations here were "related to" or "independent" of the contract is hardly clear, as both parties can identify some support in the caselaw. And the issue calls for the kind of "fact-specific" inquiry generally inappropriate for resolution for the first time on appeal. *See Access Now*, 385 F.3d at 1332–33. Plus, PRO's reply brief wholly fails to respond to the forfeiture

issue, which Hinckley raised in its response brief, so it offers no reason to deviate from the general rule that issues raised for the first time on appeal will not be considered. Accordingly, we decline to resolve whether the negligent misrepresentation claim is sufficiently independent of the warranty to be excepted from the economic loss rule.

As for the negligent-installation claim, PRO likewise failed to raise its current argument at summary judgment, so it is forfeited. In any case, the only argument PRO makes on appeal regarding this claim and the economic loss rule is that it "sought damages for 'consequential' damages," citing its operative pleading. But PRO "may not rest upon mere allegation or denials of [its] pleadings" to establish a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). And it does not cite any affirmative evidence supporting its claim for damages other than economic losses. *See id.* Accordingly, PRO has not shown that the district court erred in granting summary judgment.

## VI.

In sum, we vacate the grant of summary judgment on PRO's claim for breach of implied warranty of fitness for a particular purpose. We affirm the judgment against PRO on its claims for negligent installation and negligent misrepresentation.

**AFFIRMED in part; VACATED and REMANDED in part.**