**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0925n.06

Case Nos. 13-4431/14-3116

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 12, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BEEPER VIBES, INC., | ) | |
| | ) | |
|    Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| SIMON PROPERTY GROUP, INC., et al., | ) | OHIO |
| | ) | |
|    Defendants-Appellees/Cross- | ) | |
|    Appellants. | ) | |
| | ) | |

BEFORE: SILER, SUTTON, and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. The best-laid plans of cellphone vendors, like those of many others, sometimes go awry. Representatives of Simon Property Group promised Beeper Vibes that it would "make a lot of money" operating cellphone kiosks in five Florida malls. The kiosks failed to turn a profit, prompting Beeper Vibes to abandon them and to sue Simon for fraud and conversion. Simon responded in kind with counterclaims for breach of contract. The district court dismissed some of the claims on summary judgment and held a bench trial on the others. We affirm each of its decisions and its judgment in favor of Simon.

I.

From its base in Ohio, Beeper Vibes sells Verizon Wireless cellphones from kiosks in malls throughout the Midwest. Independent dealerships such as Beeper Vibes must receive Verizon's authorization before they can sell Verizon's products, and in 2010 Verizon told Beeper Vibes it would be willing to approve new locations in Florida. So Beeper Vibes's vice president met with representatives of Simon Property Group to discuss setting up shop in five malls there. Beeper Vibes's main concern with migrating south was the possibility of competition with one of "the big dealers," such as Best Buy Mobile or Radio Shack. R. 38 at 505. Beeper Vibes claims it never would have entered the Florida market if one of these "corporate stores" was planning to open in the malls. *Id.*

Beeper Vibes asked Simon whether it would be the only Verizon dealer in the Florida malls. In March, a manager of Boynton Beach Mall responded to Beeper Vibes's questions with, "[T]here's nothing else coming in, to [my] knowledge." *Id.* That same month, a Simon representative told Beeper Vibes that "some national tenant" planned to open in two of the malls but that "he didn't know" what company it was. *Id.* at 514. In April, Beeper Vibes emailed Simon and asked for "[n]o other Verizon Wireless location inside the mall, corporate or indirect." R. 34 at 435. This last request went unanswered.

Communication between Beeper Vibes and Simon did not improve as Beeper Vibes made preparations to enter the Florida market. The company initially planned to open kiosks in two Florida malls, Boynton Beach and Coral Square, on July 1, 2010. To that end, it sent Simon a signed copy of the lease around June 16. R. 38 at 536. Yet by June 30, Beeper Vibes still did not have an executed lease signed by Simon for either mall. When Beeper Vibes complained, a

Simon representative instructed Beeper Vibes to "just go ahead and move in" anyway. *Id.* On July 1 or 2, Beeper Vibes opened its two kiosks without a lease. *Id.* at 537 ("They tendered possession to us without the signed leases in hand. And we moved in."); *id.* at 568.

Just as Beeper Vibes moved into each mall but before it had any executed leases, it learned that Best Buy Mobile was moving into the same malls. *Id.* at 518 ("I learned that Best Buy was moving in the day we moved in the mall, and they opened up the day or the next day that we moved in."); *id.* at 568. When Beeper Vibes asked the Simon representative, "[W]hat's going on with Best Buy?" the representative responded "[W]ell, you know, sometimes I don't know about things before they come in. . . . But don't worry about it because you are going to make a lot of money." *Id.* at 537–38; *id.* at 568 ("And he assured me that—that it wouldn't be a big deal, . . . they are not a big competitor, don't worry."). After this development, Simon furnished Beeper Vibes with two amended five-year leases for the Boynton Beach and Coral Square malls that Simon representatives "said they [we]re not going to sign" until Beeper Vibes ratified the changes. *Id.* at 537. Rather than reject Simon's counteroffer due to the presence of Best Buy Mobile, Beeper Vibes decided "to try to make the best of the situation" and "try to recover the—you know, the investment that [it had already] made." *Id.* at 569. Beeper Vibes and Simon executed the amended leases on July 9, and in October they executed short-term leases at three other malls—Galleria Fort Lauderdale, Sawgrass Mills, and Dadeland—at least one of which Beeper Vibes knew already contained a Best Buy Mobile.

This strategy did not end well. Beeper Vibes's kiosks began "hemorrhag[ing]" money due to the competition from Best Buy Mobile. R. 38 at 517. On November 17, Beeper Vibes decided to cut its losses and pull inventory from its Boynton Beach kiosk for reallocation. It did

not tell anyone at Simon about its plans, and the Boynton Beach Police Department prevented the Beeper Vibes employees from taking the kiosk's merchandise.

After this run-in with the police, Beeper Vibes removed its inventory from the other malls. *Id.* Beeper Vibes also demanded its inventory from Boynton Beach. The Boynton Beach manager refused, telling Beeper Vibes that he would continue to hold it "to recover monies" due to a "potential breach in the lease," that Beeper Vibes "w[as]n't welcome on the premises any longer," and that the "lease was terminated." *Id.* at 1640–42.

The other malls—Coral Square, Galleria, and Sawgrass Mills—were less confrontational, asking Beeper Vibes why it had "abandoned" its kiosks. *Id.* After waiting unsuccessfully a week for an answer, the malls declared Beeper Vibes in default. Beeper Vibes responded that these declarations "terminated" the leases under Florida law, freeing it of any liability for rent. *Id.*

The next month, Beeper Vibes sued Simon in federal court in Ohio for fraud in the inducement and conversion. Simon responded with counterclaims for breach of contract. The district court applied Florida law in granting summary judgment to Simon on the fraud and conversion claims. It also held a bench trial, after which it found Beeper Vibes liable for damages with respect to the Coral Square, Galleria, and Sawgrass Mills leases (but not Boynton Beach or Dadeland). Beeper Vibes appeals the summary judgment and damages findings, and Simon cross-appeals the court's judgment with regard to the Boynton Beach and Dadeland leases. Simon cross-appeals the court's damages calculation on the Coral Square lease.

II.

Beeper Vibes claims that the district court erred in rejecting its fraud claim as a matter of law. It contends that Ohio law, not Florida law, governs the claim, and that under Ohio law Simon intentionally misled Beeper Vibes into signing the Florida leases. In truth, the court's choice of law does not matter. Either way, no fraudulent inducement occurred.

In its conventional form, fraudulent inducement requires "a misrepresentation of facts outside the contract or other wrongful conduct" that "induced a party to enter into the contract." *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998); *accord Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). In Ohio and Florida, the claim requires proof that the defendant "made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to [its] detriment." *ABM Farms*, 692 N.E.2d at 578; *accord Johnson*, 480 So. 2d at 627.

The key problem with Beeper Vibes' fraudulent inducement claim is that Beeper Vibes could not reasonably have relied upon Simon's statements as inducements to sign the leases. R. 47 at 947. Beeper Vibes signed each lease *after* learning that Best Buy Mobile would be there soon (or indeed was already there). R. 38 at 537–38; *id.* at 568–69. That alone makes any alleged reliance unreasonable. On top of that, the leases were fully integrated agreements that said nothing about Beeper Vibes's exclusivity and said much about the reality that Beeper Vibes "is entering into this Lease based solely on its own investigation and not based on any representations or warranties of Landlord or its representatives." *E.g.* R. 30-6 § 2(c); *see also, e.g.*, R. 30-3 § 35 ("Tenant acknowledges that neither Landlord nor any broker has made any representations to, or agreements with, Tenant which are not contained in this Lease."). Neither

Ohio nor Florida permits fraud claims that attempt to "show[] that the inducement to enter into an agreement was an oral promise within the scope of an integrated written agreement which . . . did not ultimately include [it]." *Miller v. Wire One Techs., Inc.*, No. 19876, 2004 WL 869401, at *3 (Ohio Ct. App. Apr. 23, 2004); *accord Dentaland, P.A. v. St. Stephen Ltd. P'ship ex rel. LEF/Delray Mall, Ltd.*, 729 So. 2d 1012, 1012 (Fla. Dist. Ct. App. 1999). That is, Beeper Vibes cannot argue that its alleged reliance on oral statements was reasonable when the leases disavowed Beeper Vibes's reliance on oral statements.

Attempting to overcome this conclusion, Beeper Vibes relies on two Florida cases—*Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla. 1941); *Allen v. Stephan Co.*, 784 So. 2d 456 (Fla. Dist. Ct. App. 2000)—to show that a fraud claim can survive an integrated lease. But simply because Beeper Vibes is not *prohibited* from bringing a fraud claim does not mean Beeper Vibes can prove the *elements* of its fraud claim. Neither case suggests otherwise. In *Oceanic Villas*, the Florida Supreme Court held that an integration clause similar to the ones at issue here did not "estop[]" the lessee from alleging fraud or "make the contract incontestable because of fraud." *Oceanic Villas*, 4 So. 2d at 690–91. But the court went on to call an integration clause "evidence[]" that "neither party has relied upon the representations of the other party made prior to the execution of the contract." *Id.* at 691; *accord Cassara v. Bowman*, 186 So. 514, 514 (Fla. 1939). Here, we have that precise "evidence" *and* Beeper Vibes' actual knowledge that Best Buy Mobile would enter the relevant malls or already had done so before any final leases were signed. In *Allen*, a Florida appellate court held that the "economic loss doctrine" does not bar a party from alleging fraud in connection with misrepresentations that "cause the complaining party to enter into a transaction." *Allen*, 784 So. 2d at 457. But again, no one here thinks Beeper Vibes's claim is barred; the claim just lacks merit. As explained

above, it was unreasonable as a matter of law for Beeper Vibes to rely on Simon's statements regarding Best Buy Mobile when the integrated leases said nothing about competition and when Beeper Vibes learned about Best Buy Mobile's entry into the market *before* signing the final copy of each lease. The district court correctly rejected Beeper Vibes's fraud claim as a matter of law.

## III.

Beeper Vibes' conversion claim fares no better. It says that Simon wrongfully took its property when the Boynton Beach Police Department and the mall prevented it from liquidating the kiosk. *See Star Fruit Co. v. Eagle Lake Growers*, 33 So. 2d 858, 860 (Fla. 1948). Yet in its Boynton Beach lease, Beeper Vibes waived all "claims for damages resulting from . . . damage to or loss by theft or otherwise of property of Tenant or others; acts or omissions of persons in the Premises; . . . and any act or omission of . . . [Simon], its agents or employees." R. 30-3 § 19. Under the contract, Beeper Vibes waived this claim.

## IV.

Beeper Vibes separately challenges the district court's calculation of damages, a fact-based argument that must overcome the strictures of clear-error review. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 561–62 (6th Cir. 2012). "[W]e cannot substitute our judgment for that of the lower court but rather must uphold the lower court's account of the evidence if it 'is plausible in light of the record viewed in its entirety.'" *Pledger v. United States*, 236 F.3d 315, 320 (6th Cir. 2000) (internal quotation omitted).

The district court's key finding of fact turned on its assessment of the Simon malls' options in response to Beeper Vibes' abandonment of its kiosks. Under Florida law, when a tenant breaches, abandons, or renounces a lease, the landlord has three options. The landlord "may treat the lease as terminated and resume possession of the premises . . . exclusively as his own for his own purposes." *Williams v. Aeroland Oil Co.*, 20 So. 2d 346, 347–48 (Fla. 1944). If the landlord chooses this option, he may not sue for consequential damages as he has voluntarily extinguished the tenant's future obligations under the lease. *Wagner v. Rice*, 97 So. 2d 267, 270 (Fla. 1957); *see also* 49 Am. Jur. 2d Landlord and Tenant § 257. Or the landlord may "retake possession of the premises for the account of the tenant." *Williams*, 20 So. 2d at 348. If the landlord takes this option, he can "hold[] the tenant in general damages for the difference between the rentals stipulated to be paid and what, in good faith, the landlord is able to recover from a reletting." *Id.* Or the landlord "may stand by and do nothing, and sue the [tenant] as each installment of rent matures, or for the whole when it becomes due." *Id.* Whether a landlord selected choices one, two, or three "is ordinarily a question of fact" determined by asking "whether the possession taken by the [landlord] is of an exclusive character, with the apparent intention of occupying and controlling the premises as his own, to the exclusion of the tenant, in case the latter desires to return." *Kanter v. Safran*, 68 So. 2d 553, 556 (Fla. 1953) (internal citations and quotation marks omitted).

The district court found that, after Beeper Vibes breached its leases in the Coral Square, Galleria, and Sawgrass Mills malls, Simon picked option two. The court held that Simon was entitled to damages consisting of Beeper Vibes's rent minus what Simon was able to recover from reletting. Beeper Vibes calls this finding—and the calculation of damages that went with it—clearly erroneous. We cannot agree.

The district court premised its finding that Simon chose option two rather than option one on a plausible view of the record. The court found that, after Beeper Vibes removed what inventory it could from the Coral Square, Galleria, and Sawgrass Mills malls, Simon sent Beeper Vibes letters declaring it in default of its obligations under the leases. R. 79 at 1765–66. These letters showed Simon's desire to repossess the property and to hold Beeper Vibes liable for rent, just as it had a contractual right to do. *Id.* at 1777; *see, e.g.*, R. 30-4 § 26; R. 30-6 § 21. The court interpreted this as exercising "the second [*Williams*] option," R. 79 at 1777, because Simon was expressing its desire to keep the leases operational. Not only does this finding strike us as plausible, but it also strikes as the best reading of the record.

With respect to the Coral Square lease, the court awarded Simon damages for rent due minus the rent it received from a perfume company, Payless Fragrances, from July 2011 through June 2013. *Id.* at 1777–78. This too turns on a plausible view of the record. In making this finding, the court relied on evidence that Payless occupied its space from December 2010 onward. *Id.* at 1767. Although Beeper Vibes complains that the court should have subtracted the rent Simon received beginning in December 2010, not July 2011, the court explained that Beeper Vibes failed to offer any evidence of what rent Payless paid prior to July 2011. That is a reasonable explanation for the discrepancy. R. 93 at 1989.

With respect to the Galleria lease, the court awarded Simon full damages for the rent Beeper Vibes would have paid had it not breached. That was clear error, Beeper Vibes says, for two reasons: (1) After Galleria declared a default, Beeper Vibes itself "terminated" the lease, extinguishing its obligations to pay rent; and (2) there was an unnamed sausage vendor in the space during the 2010–2011 holiday season, and Simon should have mitigated its rent accordingly. Neither contention holds water. Once Beeper Vibes breached the lease and Simon

9

declared a default, as the district court found, Beeper Vibes no longer had the option to terminate its own obligations unilaterally: "A party to a contract cannot take advantage of his own wrongdoing to avoid responsibility thereunder." *Waters v. Key Colony E., Inc.*, 345 So. 2d 367, 367 (Fla. Dist. Ct. App. 1977). As for the sausage vendor, the court found "insufficient evidence" of the claim. R. 79 at 1775 n.20. That was all it needed to say when the burden of proving the sausage vendor's existence (and the rent it paid) fell on Beeper Vibes.

With respect to the (two) Sawgrass Mills leases, the court awarded Simon damages minus what it recovered from new tenants. Beeper Vibes contends that Simon unreasonably charged one of the new tenants less rent for a larger space, increasing the damages Beeper Vibes owes. But as the district court found based on the evidence before it, "a lease involving more square footage does not necessarily lead to a higher rent." R. 79 at 1779. All told, the court's damages findings were not clearly erroneous.

V.

Simon raises three cross-appeals of its own. Each is unconvincing. Simon first challenges the district court's finding that "[t]here is no evidence that Dadeland ever tendered possession of the space to Beeper Vibes"—a finding that led the court to conclude Beeper Vibes did not breach the Dadeland lease. R. 79 at 1775. On appeal, Simon presents the missing "evidence": a November letter Beeper Vibes sent stating its attorney's "understanding that your company has taken possession of the above captioned leasehold." App'x 291. That, however, does not show that Simon delivered possession of the space.

Simon next challenges the district court's factual finding that, with respect to the Boynton Beach lease, Simon treated the lease as terminated and retook possession exclusively for its own

purposes, thereby selecting *Williams* option one (and preventing Simon from later collecting damages). R. 79 at 1776. The court's finding, however, is based on a plausible reading of the record. The district court found that, after seizing Beeper Vibes's property, the manager of the mall told Beeper Vibes it "was not welcome on the premises any longer" and that the "lease was terminated." *Id.* The key difference between *Williams* option one and *Williams* option two is whether the landlord has "the apparent intention of occupying and controlling the premises as his own, to the exclusion of the tenant, *in case the latter desires to return*." *Kanter*, 68 So. 2d at 556 (emphasis added). Simon clearly expressed an intention to prevent Beeper Vibes from returning to the Boynton Beach Mall.

Simon finally challenges the district court's finding that, with respect to the Coral Square Mall lease, Beeper Vibes owed only rent due minus what Simon was able to recover from Payless Fragrances, the later tenant. R. 79 at 1777–78. Simon claims it would have been able to recover rent from Payless *and* Beeper Vibes had Beeper Vibes not abandoned its kiosk, and thus that the court erred by mitigating its damages. But the district court evidently did not believe Simon, holding: "Despite Defendants['] claim to the contrary, the evidence supports a finding that . . . there was no other space in the mall where Payless Fragrances would have had access to a telephone line or power outlet required to operate." R. 79 at 1777. Factfinding does not become clearly erroneous merely because it sides with one party's view of the evidence over another's.

VI.

For these reasons, we affirm.