[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10713
_____

D.C. Docket No. 9:13-cv-80283-KLR

GLOBAL QUEST, LLC,

Plaintiff –
Counter Defendant –
Appellant,

versus

HORIZON YACHTS, INC,
HORIZON GROUP, et al.,

Defendants –
Counter Claimants –
Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 24, 2017)

Before MARCUS and FAY, Circuit Judges, and FRIEDMAN,* District Judge.

_____

* Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

FRIEDMAN, District Judge:

Plaintiff Global Quest, LLC appeals from the district court's grant of summary judgment to defendants on all but one count of plaintiff's amended complaint and to defendant Horizon Yachts, Inc. on its counterclaim for foreclosure of a promissory note. Plaintiff appeals from the district court's entry of partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[1] We reverse the district court's grant of summary judgment to defendants on Counts I, III, IV, VII, and VIII of plaintiff's amended complaint and the grant of summary judgment to defendant Horizon Yachts, Inc. on its counterclaim.[2]

## I.  BACKGROUND

Plaintiff purchased a 105 foot luxury super-yacht, specifically a CC-105 Horizon Explorer named "Starlight," from defendant Horizon Yachts, Inc. ("Seller"). The yacht was manufactured by defendant Horizon Yacht Co., Ltd. ("Horizon") and its wholly-owned subsidiary Premier Yacht Co., Ltd. ("Premier")

---

[1] "When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b); see Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 778-80 (11th Cir. 2007).

[2] Plaintiff does not challenge the district court's entry of summary judgment on Counts II, V, VI, IX, and X of the amended complaint. Counts VIII, IX, and X incorrectly are labeled in the amended complaint as IX, X, and XI respectively.

in Taiwan.  While both Horizon and Premier are Taiwanese companies, Seller is an independent U.S. Corporation based in Florida.  It is undisputed, however, that the Seller is Horizon's agent and appears to be owned, at least in part, by Horizon and Premier's founder and CEO, John Lu.  HORIZON YACHTS, INC., http://www.horizonyachtusa.com (last visited May 10, 2016) ("Horizon Yacht USA is the U.S. agent for Horizon Yachts").

Plaintiff purchased the Starlight for $6,835,000 after negotiating and executing a Purchase and Sale Agreement with Seller, along with an Addendum executed shortly thereafter.  That contract, as modified by the Addendum, contains a seemingly self-contradictory provision.  The "as is" clause in the original Agreement, paragraph 10, states that "upon closing, buyer will have accepted the vessel in its 'as is' condition.  Seller and the brokers have given no warranty, either express or implied, and make no representation as to the condition of the vessel, its fitness for any particular purpose or merchantability, *all of which are disclaimed.*"  The Addendum, however, modifies this clause — providing that before the word "Seller," "the following language is inserted: 'Other than the limited express warranty attached here as Exhibit A.'"  With this alteration, paragraph 10 thus reads:  "Other than the limited express warranty attached here as Exhibit A, Seller and the broker have given no warranty, either express or implied . . . ."  Thus, while the original Agreement purported to disclaim all warranties, express or

3

implied, the Addendum inserted an express limited warranty into the contract. But the Addendum also contains a further provision stating that "[t]he terms of this Acceptance shall govern over any inconsistent terms in the Purchase Agreement which is hereby ratified and declared to be in full force and effect."

As stated in the Addendum, Plaintiff was given a limited express warranty, the terms of which were negotiated by the parties as part of the sale. Issued on Seller's letterhead but purporting to be from "Horizon Group," a trade name for Horizon's companies, the limited warranty covers certain manufacturing and design defects for a period of one year from the contract date. It is limited, however, to "covered defects first discovered and reported to Horizon or the Original Selling Dealer." The limited warranty also disclaims "all other express and implied warranties (except title)," and states that "[n]o employee, representative, authorized dealer or agent of Horizon other than an executive officer of Horizon is authorized to alter or modify any provision of the Limited Warranty or to make any guaranty, warranty or representation, express or implied, orally or in writing which is contrary to the foregoing." The limited warranty also lists Premier and its contact details on the final page, without any explanation as to their relationship to the warranty.

Plaintiff contends that defendants made numerous false representations regarding the yacht's condition during the negotiation of the sale. Specifically,

4

plaintiff claims that the yacht was represented to be MCA LY2 compliant and built to DNV standards, both in statements made by Seller's sales representative and on Horizon's webpage advertising the Starlight.[3]  Plaintiff claims that after it took possession it quickly discovered that the yacht was not MCA LY2 compliant nor was it built to DNV standards.  The yacht had numerous problems that sharply limited the range of the vessel to short distances and also had electrical issues that rendered it unsafe.  After defendants refused to repair or address the problems under the warranty, plaintiff filed suit against the three defendants, bringing ten claims under the amended complaint against each defendant: (1) fraud in the inducement; (2) revocation of acceptance under the Magnuson-Moss Warranty Act; (3) breach of the implied warranties of merchantability and usage of trade; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach of a pre-purchase express oral warranty; (6) breach of a post-purchase express oral warranty; (7) breach of the implied warranty of workmanlike performance; (8) breach of the express written limited warranty; (9) rescission of the promissory note executed with the purchase; and (10) an injunction barring defendants from foreclosing on the promissory note or taking possession of the yacht for non-payment.  Seller counterclaimed to foreclose on the promissory note.

---

[3] MCA is an acronym for the United Kingdom's Maritime and Coastguard Agency.  The agency publishes, among other codes, the Large Commercial Yacht Code, abbreviated "LY2", which is a set of building standards for large yachts.  DNV stands for "Det Norske Veritas" and it is the world's largest classification society.  The organization sets safety, reliability, and environmental standards for maritime vessels.

The district court entered summary judgment for defendants on all but two claims:  the breach of express warranty claims against Horizon and Premier.  The district court also entered summary judgment for Seller on its counterclaim to foreclose on the promissory note.  Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court certified the judgment as a partial final judgment for interlocutory review.  Plaintiff appeals, challenging the district court's entry of summary judgment as to Counts I, III, IV, VII, and VIII and the counterclaim.

## II.  DISCUSSION

We review a district court's grant of summary judgment *de novo*.  Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014) (citing Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1307 (11th Cir. 2012)).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Id.; see also FED R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Plaintiff challenges the entry of summary judgment as to: (1) the fraudulent inducement claims against all three defendants (Count I); (2) the breach of implied warranty claims against all three defendants (Counts III, IV, and VII); and (3) the breach of express warranty claim against Seller, Horizon Yachts, Inc. (Count VIII).  Each is addressed in turn.

6

A. Fraudulent Inducement: Count I

The district court granted summary judgment to all three defendants on plaintiff's fraudulent inducement claim, relying on Florida precedent holding that a plaintiff "cannot recover for fraudulent oral representations which are covered in or contradicted by a later written agreement." Sherwin-Williams Co. v. Auto Body Tech. Inc., No. 12-23362, 2014 WL 2177961, at *4 (S.D. Fla. May 26, 2014) (citing Giallo v. New Piper Aircraft, Inc., 855 So. 2d 1273, 1275 (Fla. Dist. Ct. App. 2003)). Relying on the "as is" and "entire agreement" clauses in the contract, the district court held that the claim is based on alleged pre-contractual misrepresentations that were expressly contradicted by the later written agreement, concluding that plaintiff could not have relied on the earlier statements as a matter of law due to the conflicting conditions in the agreement.

The district court expressly declined to follow Oceanic Villas, Inc. v. Godson, 4 So. 2d 689 (Fla. 1941), which, contrary to the district court's reasoning, held that an "as is" clause does not bar a plaintiff from bringing a fraud claim. Specifically, the Florida Supreme Court in Oceanic Villas held that where an agreement is procured by fraud or misrepresentation "every part of the [] contract" is vitiated because "[i]t is well settled that a party can not contract against liability for his own fraud." Id. at 690. The district court declined to follow Oceanic Villas because, in its view, (1) it "is distinguishable because it did not involve a warranty

7

disclaimer or address recent Florida law, stating that a party cannot recover in fraud for misrepresentations covered or expressly contradicted in a later written agreement;" (2) it was decided before the enactment of Florida's Uniform Commercial Code in 1965, which permits "as is" clauses and the exclusion of warranties; and (3) the Florida Supreme Court's holdings are "fact intensive and depend on a review of the conditions of the contract as a whole, not just one clause."

Plaintiff argues that the district court erred by refusing to follow Oceanic Villas and granting summary judgment to defendants on the fraudulent inducement claim. We agree.

"As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 (1938)). The Florida Supreme Court "does not intentionally overrule itself sub silentio." Puryear v. Florida, 810 So. 2d 901, 905 (Fla. 2002). "Where a court encounters an express holding from [the Florida Supreme] Court on a specific issue . . . , the court is to apply [the] express holding in the former decision until such time as [the Supreme] Court recedes from the express holding." Id.; see also Hoffman v. Jones, 280 So. 2d 431, 434 (Fla. 1973). The Florida Supreme Court has not overruled Oceanic Villas,

explicitly or implicitly.  In fact, Florida's intermediate courts of appeal have continued to apply Oceanic Villas as recently as 2011.  See, e.g., Lower Fees, Inc. v. Bankrate, Inc., 74 So. 3d 517, 519 (Fla. Dist. Ct. App. 2011); D & M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 488-89 (Fla. Dist. Ct. App. 2003); Burton v. Linotype Co., 556 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 1990); see also Carolina Acquisition, LLC v. Double Billed, LLC, No. 07-61738-CIV, 2009 WL 3190807, at *2 (S.D. Fla. 2009).  Oceanic Villas therefore remains binding precedent on the law of fraudulent inducement in Florida, a fact unchanged by the more recent case law cited by the district court.  And neither the district court nor this Court is "at liberty to disregard binding case law that is so closely on point," and has not been directly overruled by the Florida Supreme Court.  United States v. Clarke, 780 F.3d 1131, 1133 (11th Cir. 2015) (second alteration in original) (quoting United States v. Chubbuck, 252 F.3d 1300, 1305 n.7 (11th Cir. 2001)).

Oceanic Villas also is not distinguishable from this case.  Nor was its holding "fact intensive" such that its reasoning must be limited to the precise contract provisions it considered.  Oceanic Villas held that a contract provision, including an "as is" clause, cannot preclude a fraud claim, unless the contract expressly states that it is incontestable on the ground of fraud.  4 So. 2d at 690-91 ("We recognize the rule to be that fraud in the procurement of a contract is ground for rescission and cancellation of any contract unless for consideration or

9

expediency the parties agree that the contract may not be cancelled or rescinded for such cause."). This rule is directly contrary to the district court's holding that plaintiff's claim is barred by virtue of the provisions of the contract. That the contract at issue in Oceanic Villas did not contain a warranty disclaimer is a distinction without a difference. Nothing in Oceanic Villas suggests that the result would have been different with a warranty disclaimer, or any other contract provision save a specific disclaimer of liability for fraud. Absent such a disclaimer, no matter the context, "a party can not contract against liability for [its] own fraud." 4 So. 2d at 690.

The district court appears to have confused the threshold question of whether a claim is barred as a matter of law with the later question of whether the evidence is sufficient to survive summary judgment. The Sixth Circuit, applying Oceanic Villas in a diversity case, recently explained this distinction as follows:

> Attempting to overcome this conclusion [that its alleged reliance on statements was unreasonable], [Appellant] relies on two Florida cases — Oceanic Villas, Inc. v. Godson, 4 So. 2d 689, 690 (Fla. 1941); Allen v. Stephan Co., 784 So. 2d 456 (Fla. Dist. Ct. App. 2000) — to show that a fraud claim can survive an integrated lease. But simply because [Appellant] is not *prohibited* from bringing a fraud claim does not mean [Appellant] can prove the *elements* of its fraud claim. Neither case suggests otherwise. In Oceanic Villas, the Florida Supreme Court held that an integration clause similar to the ones at issue here did not "estop[]" the lessee from alleging fraud or "make the contract incontestable because of fraud." Oceanic Villas, Inc v. Godson, 4 So.

10

2d at 690-91.  But the court went on to call an integration clause "evidence[]" that "neither party has relied upon the representation of the other party made prior to the execution of the contract."  Id. at 691; accord Cassara v. Bowman, 186 So. 514, 514 (1939).  Here, we have that precise "evidence" *and* [Appellant]s' actual knowledge that Best Buy Mobile would enter the relevant malls or already had done so before any final leases were signed [directly contradicting the alleged fraudulent misrepresentations]. . . .  But again, no one here thinks [Appellant]'s claim is barred; the claim just lacks merit."

Beeper Vibes, Inc v. Simon Property Grp., Inc., 600 Fed. App'x 314, 318-19 (6th Cir. Dec. 12, 2014).  The "as is" clause and the rest of the Purchase Agreement in this case may constitute evidence against plaintiff's fraud allegations, but plaintiff's claims are not precluded as a matter of law.

The confusion over this distinction appears to have led the district court to conclude that two Florida cases, Faulk v. Weller K-F Cars, Inc., 70 So. 2d 578 (Fla. 1954), and Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306 (Fla. Dist. Ct. App. 1990), are irreconcilable and that Faulk suggests an implicit rejection of Oceanic Villas.  In Faulk, the Florida Supreme Court held that a written guarantee with a clear disclaimer of warranties and representations "negatives the idea of fraudulent misrepresentations" and that plaintiff's "allegations and the proof with reference to fraudulent misrepresentations were wholly insufficient."  70 So. 2d at 579.  Faulk thus is an illustration of the above distinction — the court did not address whether the claim was barred as a matter of law; the claim just lacked

merit because the allegations and evidence "were wholly insufficient" and the clear contract provisions weighed in the other direction.  Similarly, in Lou, the Florida District Court of Appeal did not consider whether a claim was barred as a matter of law by a contract provision, but instead found sufficient evidence to affirm a jury verdict because the plaintiff had "produced evidence as to all the elements of fraud in the inducement" despite the existence of an "as is" provision in the contract. 570 So. 2d at 308.  Neither Faulk nor Lou applied the rule from Oceanic Villas, and they are irrelevant for our purposes here.

Lastly, the fact that Oceanic Villas was decided before Florida's enactment of the Uniform Commercial Code also is of no moment because, although the UCC permits "as is" clauses and warranty disclaimers, it is silent as to the impact, if any, that such contract provisions have on fraud claims.  See Hill v. Florida, 711 So. 2d 1221, 1224 (Fla. Dist. Ct. App. 1998) ("In the absence of clear constitutional or statutory authority reflecting a change in established law, we do not possess the authority to disregard controlling precedent of the [Florida Supreme Court]."); see also Hoffman v. Jones, 280 So. 2d at 434.  There is no indication that the Florida legislature intended to overrule Oceanic Villas by passing the UCC.  See also Tinker v. De Maria Porsche Audi, Inc., 459 So. 2d 487, 491 (Fla. Dist. Ct. App. 1984) (Florida's UCC "states that the pre-Code law with regard to fraud supplements the U.C.C. and is not displaced by the Code, unless a particular

12

provision specifically provides for such displacement.") (citing Fla. Stat. § 671.103).

Defendants suggest two alternatives bases on which we might affirm the district court. First, defendants maintain that they are entitled to summary judgment because there are no genuine issues of material fact. Specifically, defendants argue that plaintiff has failed to present "any record evidence of the required elements of knowledge and intentional deceit." In fraud cases, however, summary judgment "is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." Coastal Investment Properties, Ltd. v. Weber Holdings, LLC, 930 So. 2d 833, 834 (Fla. Dist. Ct. App. 2006) (quoting Cohen v. Kravit Estate Buyers, Inc., 843 So. 2d 989, 991 (Fla. Dist. Ct. App. 2003)); see also Burton, 556 So. 2d at 1129-30 ("Fraud is ordinarily inappropriate for summary disposition; only after a full explanation of the facts and circumstances can the occurrence of fraud be determined."). To establish a claim of fraud in the inducement under Florida law, a plaintiff must establish that: (1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that the representation was false; (3) the representor intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the representation and was injured as a result.

13

Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010) (citing Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985)).  Despite defendants' protestations that there is no direct evidence proving intent and knowledge, suffice it to say that the elements of fraud — particularly including intent and knowledge — may be, and often are, proven by circumstantial evidence.  See, e.g., Bacon & Bacon Mfg. Co. Inc. v. Bonsey Partners, 62 So. 3d 1285 (Fla Dist. Ct. App. 2011); Century Properties, Inc. v. Machtinger, 448 So. 2d 570 (Fla. Dist. Ct. App. 1984).  Viewed in the light most favorable to plaintiff, there is sufficient evidence on the elements of fraudulent inducement for this case to proceed to trial.

Internal emails of the defendants indicate knowledge of the yacht's very poor condition, and plaintiff's representative, Paul Queyrel, and its brokers testified in depositions that defendants and their representatives made representations to them during the sales pitch about the condition of the yacht and specifically that it met international standards, which allegedly proved false after delivery.  In addition, plaintiff alleges that defendants advertised the yacht, both on the internet and in physical handouts, as being MCA LY2 compliant and built to DNV standards.  Plaintiff's representative and its brokers also testified that they discussed these two standards at length with defendants and relied on defendants' written and oral representations, and that defendants were aware that these standards were "the selling point" of the sale.  Plaintiff claims that these repeated

14

representations induced it to purchase the yacht. Plaintiff's representative and its brokers further testified that the yacht was represented to be new, not a used "dealer-demo" as defendants claim, and that when certain problems were discovered prior to the sale, defendants "represented that Horizon would 'take care of' and fix th[e] problem."

The CEO of the Seller, Roger Sowerbutts, denied under oath ever making representations that the yacht was MCA LY2 compliant, denied that defendants were aware of manufacturing defects and damage to the yacht, and claimed that defendants believed the yacht to have been built to DNV standards. Mr. Sowerbutts conceded, however, that defendants' website incorrectly described the yacht as MCA LY2 compliant, despite the fact that the yacht "never was inspected by MCA." There therefore are genuine issues of material fact and evidence sufficient to survive summary judgment as to all four elements of the claim of fraudulent inducement.

Second, defendants argue that the economic loss rule bars plaintiff's claim for fraudulent inducement. The "economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Tiara Condominium Assoc., Inc. v. Marsh & McLennan Companies, 110 So. 3d 399, 401 (Fla. 2013). The rule was designed to prevent the application of tort remedies to traditional contract law damages. Id.

15

The economic loss rule "has its roots in the products liability arena," id., and the Florida Supreme Court recently clarified in Tiara that under Florida law "the economic loss rule applies only in the products liability context." Id. at 407. The Florida Supreme Court thus "recede[d] from [its] prior rulings to the extent that they [] applied the economic loss rule to cases other than products liability." Id.; see also Alpha Data Corp. v. HX5, L.L.C., 139 So. 3d 907, 910 (Fla. Dist. Ct. App. 2013) (citing Tiara and summarily reversing a district court's decision that the economic loss rule barred a fraudulent inducement claim).

Although a fraudulent inducement claim still must be independent of a breach of contract claim, that minimal requirement is readily met here — the fraud allegations are separate and distinct from defendants' performance under the contract. The fraud allegations concern representations about the yacht's condition and certain international building standards. The contract contains no statements about either the international standards or the yacht's condition. Such claims therefore could not form the basis of a breach of contract claim.[4]

### B. Breach of Implied Warranties: Counts III, IV, and VII

The district court granted summary judgment to all three defendants — Horizon Yachts, Inc., Horizon Yacht Co., Ltd., and Premier Yacht Co., Ltd. — on

---

[4] Because judgment in favor of plaintiff on the fraudulent inducement claim would "vitiate" the contract, we also reverse the grant of summary judgment to the Seller on its counterclaim to foreclose on the promissory note.

16

plaintiff's breach of implied warranty claims due to the contract's express disclaimer of all implied warranties.  Plaintiff argues that Section 2308(a) of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2308(a), prohibits a seller from disclaiming implied warranties if an express warranty, including a limited warranty, is given.  The district court rejected this argument because "limited warranties are not governed by MMWA."  Not so.

The Magnuson-Moss Warranty Act *does* apply to limited warranties.  As relevant, Section 2308(a) provides that:

> (a)  No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if . . . such supplier makes any written warranty to the consumer with respect to such Consumer Product . . . ."

15 U.S.C. § 2308(a).  As Section 2303 of the Act makes clear, the term "written warranty" encompasses both "full" warranties, written warranties that meet "the Federal minimum standards for warranty set forth in section 2304 of [the Act]," and "limited" warranties, written warranties that do not meet the Federal minimum standards.  15 U.S.C. § 2303(a).  By its plain language, Section 2308 prohibits sellers from disclaiming implied warranties when either a full or a limited warranty is provided by the seller.  Accord Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 248 (2d Cir. 1986) ("Implied warranties . . . may not be disclaimed if a written warranty, "full" or "limited," is given, 15 U.S.C. § 2308(a)."); Boelens v.

17

Redman Homes, Inc., 748 F.2d 1058, 1063 (5th Cir. 1984) ("Although 'limited' warranties are not subject to [the standards of Section 2304], the Act does provide that the terms of a limited warranty may limit the duration of implied warranties only to the duration of the written warranty.") (quoting 15 U.S.C. § 2308).  If a jury concludes that one or all of the defendants issued or agreed to be bound by the limited written warranty, the disclaimer of implied warranties therefore would be ineffective to bar plaintiff's claim.[5]

Defendants argue in the alternative that Horizon and Premier are entitled to summary judgment because they are not in privity of contract with plaintiff, that only the Seller — Horizon Yachts, Inc. — is.  See Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 38 (Fla. 1988) (Florida law requires privity of contract for a breach of implied warranty claim).  Because, as we discuss infra at 21-25, there is a genuine issue of material fact regarding who issued the limited express warranty (Horizon, Premier, Horizon Yachts, or some combination thereof), there also is a genuine issue of fact regarding privity of contract.  Florida courts have found the

---

[5] The district court's reliance on Bailey v. Monaco Coach Co., 350 F. Supp. 2d 1036, 1042 (N.D. Ga. 2004), to reach the opposite conclusion was misplaced.  In Bailey, the Northern District of Georgia correctly noted that the MMWA distinguishes between full and limited warranties and that "[o]nly full warranties are required to meet the minimum standards set forth in 15 U.S.C. § 2304."  250 F. Supp. 2d at 1042.  The court then concluded that "because the law relating to limited warranties is not expressly modified, limited warranties . . . are not governed by Magnuson-Moss but by the Uniform Commercial Code" and went on to discuss relevant state law warranty standards.  Id.  This overly broad statement is correct as to Section 2304 — the minimum standards of Section 2304, by definition, apply only to full warranties — but incorrect as to Section 2308, which, as discussed above, does apply to limited warranties.

18

privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party.  See ISK Biotech Corp. v. Douberly, 640 So. 2d 85 (Fla. Dist. Ct. App. 1994) (finding privity where manufacturer's representative told third-party seller that seller could assure plaintiff that product would not destroy plaintiff's crop); Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of America, Inc., 444 So. 2d 1068, 1072 n.4 (Fla. Dist. Ct. App. 1984) (finding privity where manufacturer's representative made express warranty through direct contacts with the purchaser who bought product from third-party distributor).

Here, a jury could find that Horizon and Premier directly issued to plaintiff a unique limited express warranty that was provided and specifically negotiated as part of the purchase of the yacht they manufactured.  See Cedars of Lebanon, 444 So. 2d at 1072 ("It seems fundamentally unfair, and anomalous in the extreme, to allow the manufacturer to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless.").  There also is evidence that the founder and CEO of Horizon and Premier was directly involved in the negotiation of the purchase and limited warranty, it is undisputed that the Seller, Horizon Yachts, is an agent of Horizon.  HORIZON YACHTS, INC., http://www.horizonyachtusa.com (last visited May 2, 2016) ("Horizon Yacht USA

19

is the U.S. agent for Horizon Yachts").[6]  Plaintiff therefore might well be able at trial to establish privity through the agency relationship.  See Ocana v. Ford Motor Co., 992 So. 2d 319, 324-25 (Fla. Dist. Ct. App. 2008) (an agency relationship can establish the requisite privity).

### C.  Breach of Express Limited Warranty: Count VIII

The district court granted summary judgment to the Seller, Horizon Yachts, Inc., on plaintiff's breach of express warranty claim, but not to Horizon Yacht Co., Ltd. or to Premier Yacht Co., Ltd.  It held that the Seller did not issue or provide an express limited warranty to plaintiff.  The district court concluded that the Addendum did not incorporate the limited express warranty into the contract because:  (1) "it would be unreasonable to interpret paragraph ten of the agreement, indicating both that the [Seller] makes no warranties and sells the yacht "AS IS," and to thereafter include a limited warranty by the [Seller];" and (2) the Purchase Agreement, Addendum, and limited warranty "indicate[] that [Horizon Yachts] is not part of "Horizon" or "Horizon Group," the party that issued the limited warranty."

We disagree that it would be unreasonable to interpret the Purchase Agreement, as amended by the Addendum, to include both the limited warranty and an "as is" clause.  The amended "as is" clause specifically demarcates the

---

[6] Horizon Yachts, Inc. also uses the name "Horizon Yacht USA."

20

limited warranty as an exception to the clause. And the Addendum states that "[t]he Terms of this Acceptance shall govern over any inconsistent terms in the Purchase Agreement." Thus, to the extent that the original "as is" clause conflicts with the Addendum or the added limited warranty, the Addendum and limited warranty would govern — assuming, of course, that they are a part of the contract — a question to which we now turn.

A collateral document, such as the limited warranty, is deemed to be incorporated by reference into a contract if the contract "(1) specifically provide[s] that it is subject to the incorporated [collateral] document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of the parties may be ascertained." BGT Grp., Inc. v. Tradewinds Engine Servs., LLC, 62 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2011) (quoting Kantner v. Boutin, 624 So. 2d 779, 781 (Fla. Dist. Ct. App. 1993)). The first requirement mandates that "there must be some expression in the incorporating document . . . of an intention to be bound by the collateral document." Kantner, 624 So. 2d at 781. As to the second requirement, "[i]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." Id. (quoting OBS Co. v. Pace Constr. Corp., 558 So. 2d 404, 406 (Fla. 1990)).

21

Viewing the evidence in the light most favorable to the plaintiff, as we must on summary judgment, we conclude — while it is a very close question — that there are genuine issues of material fact as to whether the limited warranty was incorporated into the contract or whether the Seller, Horizon Yachts, otherwise agreed to be bound by the warranty.  Admittedly, the Purchase Agreement and the warranty appear to differentiate between "Buyer" and "Seller [Horizon Yachts]" on the one hand, and the "Horizon Group," on the other, an indication that the Seller, Horizon Yachts, is not a part of the Horizon Group, as the district court found.  And paragraph 13 of the warranty suggests that it was not the Seller who issued the warranty and that the Seller did not agree to be bound by it.  But this evidence, while strong, conflicts with three pieces of evidence that in our view raise genuine issues of material fact for a jury to resolve.

First, the Purchase Agreement, as amended by the Addendum, states that "[o]ther than the limited express warranty attached here as Exhibit A, Seller and the brokers have given no warranty, either express or implied . . . ."  This reasonably could be read to mean that the Seller, Horizon Yachts, itself, at least in part, issued the limited express warranty.  The Purchase Agreement, together with the Addendum, specifically lists the limited warranty and states that it is attached "as Exhibit A."  Moreover, the limited warranty was listed in the Closing Index, along with the Purchase Agreement and the Addendum, as a part of the parties'

22

agreement.  Second, the limited warranty was issued on the Seller's letterhead, and it was negotiated alongside the Purchase Agreement and provided to plaintiff by the Seller prior to the execution of the Purchase Agreement.  Finally, a jury also could reasonably conclude that the Seller is part of the "Horizon Group" mentioned in the limited warranty — its website states that it is the U.S. agent of Horizon and the Seller appears to be owned, at least in part, by Horizon's founder and CEO.

The Purchase Agreement as a whole thus contains conflicting provisions as to the Seller's relationship with the warranty, and it is bolstered by extrinsic evidence of the Seller's relationship with the other Horizon entities.  While there is certainly strong evidence against finding that the Seller, Horizon Yachts, Inc., agreed to be bound by the limited warranty, we believe that there is also sufficient evidence in the record to create a genuine issue of material fact entitling the jury rather than the court to decide that question.

There is one final point to address with respect to the express limited warranty.  As noted, the Purchase Agreement states that it is "attached here as Exhibit A," but it was not actually physically attached as an exhibit.  Nevertheless, the limited warranty was negotiated by the parties in conjunction with the Purchase Agreement, provided to plaintiff well before the agreement was executed, and was listed in the Closing Index.  See Avatar Properties, Inc. v. Greetham, 27 So. 3d

23

764, 766 (Fla. Dist. Ct. App. 2010) (where a home warranty was not attached to any agreement, language that "the warranty was available for examination at [the seller's] offices and that upon request the warranty would be attached as an exhibit to the purchase and sale agreement" was sufficient to satisfy the second requirement for incorporation by reference). Reading the documents together, a jury could conclude that the parties intended for the Purchase Agreement, Addendum, and limited warranty all to be part of the same contract. See Phoenix Motor Co. v. Desert Diamond Players Club, Inc., 144 So. 3d 694, 697-98 (Fla. Dist. Ct. App. 2014) (holding that documents "executed as part of the same transaction" are incorporated when "they indicate the parties' intent for the [incorporating document] and the [collateral document] to be part of the same contract"); see also Collins v. Citrus Nat'l Bank, 641 So. 2d 458, 459 (Fla. Dist. Ct. App. 1994) ("Where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together.").

## III.  CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment, as to Counts I, III, IV, VII, and VIII and remand for trial, but affirm the grant of summary judgment as to the remaining claims. We also reverse the district court's grant of summary judgment on defendants' counterclaim.

24

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**