[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14955
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cv-00424-JDW-JSS

GERALDINE KELLY,

Plaintiff-Appellant,

versus

LEE COUNTY RV SALES COMPANY,
a.k.a. North Trail RV Center,
NEWMAR CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 26, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT and LUCK, Circuit Judges.

PER CURIAM:

Geraldine Kelly appeals the partial dismissal with prejudice and partial summary judgment against her complaint against Lee County RV Sales Company, doing business as North Trail RV Center, and Newmar Corporation. Three years after North Trail sold her a recreational vehicle manufactured by Newmar, Kelly sued both companies for alleged defects in the vehicle. The district court ruled that Kelly's complaint failed to state a claim of either fraud or fraudulent inducement and dismissed those claims with prejudice. And the district court later entered summary judgment against Kelly's complaint that both companies breached express and implied warranties in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302, and breached warranties required by state law, Fla. Stat. § 320.835. Because Kelly does not challenge the adverse rulings against her claims of fraud and violations of state warranties or her claim against North Trail for violating the Act, we deem those issues abandoned. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir.2012). Kelly challenges the dismissal of her claims of fraudulent inducement and the summary judgment against her claim that Newmar violated the Act. We affirm.

## I. BACKGROUND

On June 4, 2014, Kelly bought a new Canyon Star recreational vehicle from North Trail. She purchased the vehicle without meeting or talking to a Newmar representative. North Trail provided Kelly an installment contract, and she

2

completed a pre-delivery inspection form. Kelly wrote on the form that she took "2 ½ hours" to inspect the vehicle, had driven it "at the time of purchase," and "found the vehicle to be without defects."

Kelly executed a two-page purchase contract. Each page had a clause, written in all capital letters and bold font, stating that North Trail "expressly disclaim[ed] all warranties, either express or implied" and that the contract constituted their entire agreement. The disclaimer clause on the second page of the contract also stated "that the manufacturer(s) limited written warranty(s) on this vehicle . . . contains and constitutes the sole remedy for any problems or defects this vehicle might contain." The second page of the contract also contained a paragraph that defined the terms "dealer," "purchaser" and "manufacturer" and described their respective relationships:

> As used in this Contract, the terms (a) "Dealer" or "Seller" shall mean the Authorized Dealer to whom this Contract is addressed and who shall become a party hereto by its acceptance hereof; (b) "Purchaser" shall mean the party executing this Contract as such on the face hereof; and (c) "Manufacturer" shall mean the corporation that manufactured the vehicle or chassis, it being understood by Purchaser and Dealer that Dealer is in no respect the agent, that Dealer and Purchaser are the solo parties to this Contract and that reference to Manufacturer herein is for the purpose of explaining generally certain contractual relationships between Dealer and Manufacturer with respect to new vehicles.

North Trail told Kelly that Newmar provided a one-year limited warranty for the vehicle. The certificate from Newmar stated that if "any part" of the vehicle "fail[ed] because of a manufacturing defect within twelve (12) months from the . . .

3

date of purchase, it will be repaired without charge for either parts or labor . . . ." The certificate also stated it was "an essential term of this warranty" that purchasers report to and have defects corrected at the "selling dealership or at an authorized Newmar service center." The company excluded from its warranty any product "used for commercial purposes (any use for business or profit)," the "[i]nstallation of any 'aftermarket' devices," and all routine maintenance, which included the "[c]osmetic alignment of the 'slide out(s)' and other cosmetic adjustments . . . ."

In 2014, Kelly had a series of problems with the vehicle. In June, an awning North Trail added to the vehicle malfunctioned. North Trail replaced a control board in the unit, which permanently remedied the problem. In October, the driver's side slide-out panel would not retract, and Kelly had the panel repaired without charge at a shop in Pennsylvania that was not approved by Newmar.

During Kelly's first year of ownership, North Trail made other repairs to her vehicle without charge. In November 2014, North Trail repaired the passenger's side slide-out panel and the microwave. In January 2015, North Trail installed a surge protector, and in April 2015, it replaced the microwave. And when Kelly reported that her windshield "fell out," North Trail returned the windshield to its frame and re-sealed the molding.

North Trail also repaired Kelly's vehicle without charge after the one-year warranty period expired. In 2016, North Trail replaced Kelly's hot water heater. Although Newmar "respectfully declined [Kelly's] request for trade assistance" in January 2017 to repair the chassis of her vehicle, later that year North Trail re-attached the molding surrounding Kelly's windshield after it detached.

In 2018, Kelly filed a complaint in a Florida court against North Trail and Newmar, which the companies removed to the district court. Kelly alleged claims of breach of express and implied warranties in violation of the Magnuson-Moss Act, fraud, and fraudulent inducement. The district court ruled that Kelly's latter two claims failed as a matter of law and dismissed those claims with prejudice. The district court also dismissed her claims based on the Act without prejudice and granted her leave to amend her complaint.

Kelly's third amended complaint alleged claims against North Trail and Newmar under the Act. Kelly alleged that North Trail breached "a 'written warranty'" and an "implied[] warrant[y] that said recreational vehicle was of merchantable quality" that were created when it "completed a pre-delivery inspection form(s)." Kelly also alleged that Newmar breached an implied warranty of merchantability created by its agent, North Trail, and that Newmar breached its written limited warranty by failing to remedy defects in the slide-out panels on the vehicle and in the windshield.

5

The district court granted summary judgment in favor of North Trail and Newmar. The district court ruled that North Trail had expressly and conspicuously disclaimed all warranties in compliance with Florida law and that Kelly offered no evidence that "the pre-delivery form constituted a written warranty" that the vehicle "would be free from defects in material or workmanship." The district court also ruled that Kelly's claim against Newmar for breach of an implied warranty failed because North Trail was not an agent of Newmar and Kelly lacked privity of contract with Newmar. And the district court ruled that Kelly's claim that Newmar breached its express warranty failed as a matter of law.

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of a complaint for failure to state a claim and accept its allegations as true, construing them in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). We also review *de novo* a summary judgment. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1026 (11th Cir. 2017).

## III. DISCUSSION

Kelly raises three arguments on appeal. First, she argues that she enjoyed privity of contract with Newmar for her claim of breach of the implied warranty of merchantability. Second, Kelly argues that the record establishes that Newmar breached its express warranty. Third, Kelly argues that the district court erred by

6

dismissing her complaint of fraudulent inducement against North Trail. We address each argument in turn.

### A. Kelly Lacked Privity of Contract with Newmar.

The Magnuson-Moss Act provides a cause of action for a "consumer" damaged by a supplier's breach of an implied warranty. 15 U.S.C. § 2310(d)(1). The Act defines "implied warranty" as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." *Id.* § 2301(7). Under Florida law, a consumer must enjoy privity of contract with a supplier to recover for breach of an implied warranty. *Mesa v. BMW of North Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("[A] plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *see Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of claim based on Magnuson–Moss Warranty Act for breach of implied warranty due to lack of privity between buyers of used vehicle and its manufacturer). That is, a consumer must purchase the product from the supplier because "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1).

Kelly lacked contractual privity with Newmar. Kelly purchased her vehicle from and entered into a contract with North Trail. Her complaint identified North

Trail as the "seller." And she acknowledged in the purchase contract that she "understood . . . [North Trail] is in no respect the agent" of the manufacturer.

Kelly argues that *Global Quest*, 849 F.3d 1022, establishes she that enjoys contractual privity with Newmar based on its written warranty, but we disagree. We concluded in *Global Quest* that an issue of material fact existed whether privity existed between the consumer and manufacturer because the written warranty was made an addendum to the purchase contract, the seller was an agent of the manufacturer, the seller and manufacturer had similar names, and an executive for the manufacturer owned part of the seller. *Id.* at 1025, 1032. Kelly presented no evidence that the limited express warranty was made part of her contract with North Trail or that Newmar was involved in the sale. Indeed, Kelly admitted that she had no contact with Newmar before her purchase.

### B. Newmar Did Not Breach Its Express Warranty.

The Magnuson-Moss Act also provides a cause of action for a consumer to sue for breach of an express warranty. *See* 15 U.S.C. § 2310(d). The Act allows a warrantor to limit its warranty, so long as it does so "conspicuously." *See id.* § 2303(a)(2). Florida law governs whether Newmar breached its express warranty.

In Florida, a warrantor is permitted to limit the remedies available to the consumer. Fla. Stat. § 672.719(1)(a). A limited warranty fails of its essential purpose when the warrantor neglects to repair defects within a reasonable time or

reasonable number of attempts. *See Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983). To establish the breach of a limited warranty, a consumer must prove that the product had a defect covered by the warranty when sold, the consumer provided notice of the defect to the warrantor within a reasonable time after its discovery, and the warrantor failed to repair the defect. *See* Fla. Stat. § 672.607(3)(a).

Kelly presented no evidence that Newmar breached its limited warranty. Kelly declared on her pre-delivery inspection form and later testified that her vehicle was in good condition when she purchased it. She also testified that North Trail and others repaired problems with her slide-out panels and windshield without charge, even beyond her first year of ownership. Newmar submitted expert testimony that the slide-out panels on Kelly's vehicle operated normally and were defect-free and that her windshield was an "after-market" item that required adhesive to affix it to the molding. And Kelly offered no expert testimony that her vehicle had any defects. Kelly argues that "various recall notices were issued" by Newmar, but she identifies no evidence that the recalls concerned the defects she alleged.

### C. Kelly's Claim of Fraudulent Inducement Fails.

Kelly's complaint of fraudulent inducement fails as a matter of law. Under Florida law, "no cause of action in tort can arise from a breach of a duty existing

9

by virtue of contract." *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. Dist. Ct. App. 1969); *see Bankers Risk Mgmt. Servs., Inc. v. Av-Med Managed Care, Inc.*, 697 So. 2d 158, 161 (Fla. Dist. Ct. App. 1997) ("fraudulent representations . . . intertwined with the performance of the contract . . . do not rise to the level of an independent tort"). Kelly's complaint alleged that her retail installment contract promised that "[w]arranty information [would be] provided to [her] separately," but that she "never received any separate warranty information or book." Because Kelly's complaint alleged no injury separate from a breach of a contractual duty, the district court committed no error when it dismissed her claim for the tort of fraudulent inducement.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of North Trail and Newmar.

10