[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15014
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cv-60250-UU

PETER E. SHAPIRO, P.A.,

Plaintiff-Appellant,

versus

WELLS FARGO BANK N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 27, 2019)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Peter E. Shapiro, P.A. ("Shapiro"),[1] a law firm domiciled in the State of Florida, appeals the district court's grant of summary judgment to Wells Fargo Bank, N.A. ("Wells Fargo"), a federally chartered national bank domiciled in South Dakota and California.  After falling victim to a targeted email phishing scam,[2] Shapiro filed a diversity action in the United States District Court for the Southern District of Florida alleging that Wells Fargo should not have processed a $504,611.13 wire he initiated through his own bank in connection with the closing of a business transaction.  Although he presents several arguments on appeal, Shapiro's essential argument is that Wells Fargo should not have processed his wire because it knew—or with the exercise of reasonable due diligence should have known—that the account name identified in Shapiro's payment order did not match the account name actually associated with the Wells Fargo account number identified in the payment order.[3]  We have reviewed the parties' briefs, relevant

---

[1] Peter E. Shapiro, an individual, is the sole principal and employee of the Shapiro law firm.  Although the Shapiro law firm entity is the named plaintiff-appellant in this appeal, we refer to the individual and the law firm entity interchangeably in this decision.

[2] "Phishing doesn't attack computers.  It attacks the people using computers." Quinn Norton, Phishing Is the Internet's Most Successful Con, Atlantic (Sept. 12, 2018), https:// www.theatlantic.com/technology/archive/2018/09/phishing-is-the-internets-most-successful-con/569920.  Phishing attacks come in many different varieties and go by many different names (a fake email targeting a specific person, like Shapiro in this case, is sometimes called spear-fishing), but all phishing attacks are intended to trick a person using a computer into sharing information or doing something that benefits the perpetrator of the fraud.  See id.

[3] We address Shapiro's Article 4A arguments in Part III.A, infra.  Shapiro also argues that the district court erred by dismissing his common law negligence claim on grounds that it was preempted by Article 4A and by later denying its motion to amend to restate a broader common law negligence claim.  We address these two latter arguments in Part III.B, infra.

2

portions of the record, and applicable law, including applicable provisions of Florida's codification of Article 4A of the Uniform Commercial Code ("UCC") dealing with funds transfers. For the reasons described below, we affirm the decisions of the district court that together resulted in the granting of Wells Fargo's motion for summary judgment and the dismissal of Shaprio's claims.

## I. BACKGROUND

We assume the parties are familiar with the factual and procedural background of this case and recount that background here only to the extent necessary to provide context for our decision. Shapiro was engaged by his father and brother to provide legal counsel in connection with the sale of their car dealership in upstate New York. In connection with the closing of the sale transaction, Shapiro's father and brother were required to pay off a short-term loan to a lender represented by another attorney, James Messenger ("Messenger"). On November 16, 2017, Shapiro's brother forwarded Shapiro an email from Messenger indicating that the loan payoff wire should be sent to Messenger's account at M&T Bank in Syracuse, New York. The next day, November 17, 2017, Shapiro's brother forwarded Shapiro a second email (this one also purportedly from Messenger) providing a different set of wire instructions, this time to a Wells Fargo branch in Texas. The email read as follows:

> Please here are my escrow account for today payoff wire transfer instructions. Our M&T bank is currently on audit as a result can't

3

receive funds for now.  Please let the wire transfer be made to this our Wells Fargo bank.  Find attached our bank details.

The attached bank details identified a valid Wells Fargo account number and named Messenger as the beneficiary, but the account did not belong to Messenger. Instead, it belonged to a person named Chris Achebe, a Nigerian citizen living in the United States.

Shapiro did not speak with Messenger or email him to confirm the wire instructions.[4]  In instructing his bank (Citibank) to send his clients' loan payoff to Messenger on November 21, 2017, he instructed it to send a wire in the amount of $504,611.13 to the valid Wells Fargo account number named in the second email from Shapiro's brother.  Wells Fargo received the wire transfer through the electronic Fedwire system, and it processed the wire using another electronic system known as the Money Transfer System ("MTS").  Because in fact the name

_____

[4] A quick phone call from Shapiro to Messenger before initiating the wire probably would have revealed the fraud and saved the parties a great deal of time and money.  That said, Shapiro's actions in this regard do not play into our analysis in this case because the official comments to Fla. Stat. § 670.207 indicate that "Article 4A makes irrelevant the issue of whether [the originator of a funds transfer] was or was not negligent in issuing its payment order."  Fla. Stat. § 670.207, Official Comment 2.  We note this principle is different in other UCC articles, including Article 3 and Article 4, where it is a "fundamental principle . . . that the loss resulting from [other frauds like] forgery or alteration should fall on the party in the best position to prevent the fraud."  Salvatore Scanio & Robert W. Ludwig, Contracting Out of the Uniform Commercial Code: Reducing Bank Liability by Shortening the One-Year Notice Period for Reporting Check Fraud, 33:11 Banking & Fin. Servs. Policy Report 15, 17 n.8 (Nov. 2014). Regarding our reliance on the official comments to Article 4A, see In re Graupner, 537 F.3d 1295, 1301 n.4 (11th Cir. 2008) (noting that the official comments to the UCC "occupy an unusual position as aids to statutory interpretation and should be regarded as an indispensable part of the UCC framework") (citations and internal quotation marks omitted)).

of the intended beneficiary (James H. Messenger) did not match the name of the owner of the Wells Fargo account identified in Shapiro's payment order (Chris Achebe), the automated MTS audit trail[5] reflected that there was a "possible name mismatch in [credit] party," although no individual person was aware of that. Notwithstanding this possible name mismatch, Wells Fargo's MTS processed the wire—as it was programmed to do—because the account number in Shapiro's payment order matched a valid Wells Fargo account number. Although the wire was manually screened by an individual person for Office of Foreign Assets Control ("OFAC") compliance purposes,[6] the parties do not dispute that no individual person at Wells Fargo (including the OFAC screener) obtained actual knowledge of the possible name mismatch in Shapiro's payment order.

---

[5] As the district court correctly noted, the parties dispute the extent of automation involved with the MTS audit trail. We agree with the district court that the dispute is not material. Even if Wells Fargo intentionally programmed the automated portions of its MTS system to ignore potential name mismatches (which we assume to be true for purposes of reviewing the district court's ruling on Wells Fargo's motion for summary judgment), "it may rely on the number as the proper identification of the beneficiary of the order" unless and until an individual person conducting the transaction has actual knowledge of a name mismatch or would have had such knowledge had the organization exercised due diligence. See Fla. Stat. § 670.207(2); id. § 671.201(25)(c), (27).

[6] The wire transfer was directed to an OFAC screener because the partial word "ATTORN" in Shapiro's wire instructions was a possible match for the name "ATTOUN," an individual person on the OFAC sanction list apparently because of his ties to Hamas. Wells Fargo's OFAC screening process does not use the MTS system, and only the information set forth in the initial payment order received by Wells Fargo is routed to the OFAC screener for review. The OFAC screening cleared the Shapiro wire as a false positive after determining that "ATTORN" was an obvious misspelling of "ATTORNEY."

Once Wells Fargo completed the wire transfer, Achebe promptly removed the transferred funds from his Wells Fargo account. Shapiro's bank (Citibank) sent a recall request almost a month later, but Wells Fargo declined the request because the money had already been removed from Achebe's account.

Shapiro sued Wells Fargo in the District Court for the Southern District of Florida. It initially alleged that Wells Fargo breached its obligations under relevant provisions of Article 4A of the UCC. Of relevance here, Shapiro alleged that Wells Fargo should not have processed the wire because its automated systems knew that the beneficiary identified in the payment order was not the owner of the Wells Fargo's account identified in the payment order. Shapiro's complaint also alleged that Wells Fargo was negligent because it breached a common law duty of ordinary care when it failed to refuse to accept Shapiro's funds transfer or freeze the funds once they hit Achebe's account.

Wells Fargo moved to dismiss the common law negligence claim and filed an answer, and the district court granted its motion to dismiss on grounds that the negligence cause of action was preempted by Article 4A. Later, some four months after the cut-off date for amendments set forth in the district court's scheduling order, Shapiro moved to amend its complaint to add a negligence claim relating to alleged acts and omissions of Wells Fargo with respect to the Achebe account during the time period prior to the erroneous funds transfer. The district court

6

denied that motion primarily on grounds that granting it would result in significant litigation delay, but also because Shapiro had not explained how information revealed by Wells Fargo late in discovery (which Wells Fargo had initially resisted revealing) was "a necessary prerequisite" to Shapiro's expanded negligence claim. Finally, Wells Fargo moved for summary judgment as to Shapiro's Article 4A claim. The district court granted that motion, reasoning that Wells Fargo was entitled to complete the funds transfer under Fla. Stat. § 670.207(2) notwithstanding the name mismatch because the payment order identified a valid Wells Fargo account number and no individual person had actual knowledge of the discrepancy. Shapiro appealed these three decisions of the district court to this Court. This is Shapiro's appeal.

## II.  STANDARD OF REVIEW

We review a district court's grant of a defendant's motion to dismiss de novo, Young Apartments, Inc. v. Town of Jupiter, Fl., 529 F.3d 1027, 1037 (11th Cir. 2008), and a district court's denial of a plaintiff's motion to amend for an abuse of discretion, Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). Finally, we review a district court's ruling on a motion for summary judgment de novo. Global Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1026 (11th Cir. 2017). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact

7

and compels judgment as a matter of law." Id. (citations omitted); see also Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

*A.  The district court did not err in granting Wells Fargo's motion for summary judgment with respect to Shapiro's claims under Article 4A of the UCC.*

Shapiro argues on appeal that there are disputed issues of material fact with respect to the question whether Wells Fargo had "knowledge" that the beneficiary named in Shapiro's payment order was not the same person that owned the Wells Fargo account identified in the payment order.  As a result, Shapiro argues that the district court erred when it concluded, as a matter of law, that Wells Fargo lacked such knowledge and dismissed Shapiro's claims.  We disagree with Shapiro's argument.

The State of Florida has adopted Article 4A of the UCC.  The dispositive provision of Article 4A in this case is Fla. Stat § 670.207, which describes the rights, duties, and obligations of parties when a funds transfer "misdescribes" the beneficiary.  In relevant part, subsection (2) of § 670.207 provides that:

> (2) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:

> (a) Except as otherwise provided [in a later subsection not at issue in this case], if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order.  The

8

beneficiary's bank <u>need not determine whether the name and number refer to the same person</u>.

(b) If the beneficiary's bank pays the person identified by name or <u>knows</u> that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

Fla. Stat. § 670.207(2) (emphasis added). In turn, the general UCC definitions provide that a person[7] "knows" or has "knowledge" of a fact when the person has actual knowledge of the fact. <u>Id.</u> § 671.201(25)(c). An organization is deemed to have knowledge of a fact relating to "a particular transaction from the time when it is brought to the attention of the individual conducting that transaction," or, alternatively, "from the time when it would have been brought to the individual's attention if the organization had exercised due diligence." <u>Id.</u> § 671.201(27). An organization has "exercise[d] due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines." <u>Id.</u>

---

[7] The UCC defines "person" to include "an individual" and various legal entities, including corporations and associations. Fla. Stat. § 671.201(30). It also defines "organization" to mean "a person other than an individual." <u>Id.</u> § 671.201(28). Thus, in defining the rules for "knowledge," the UCC impliedly distinguishes between individual persons (i.e., human beings) and organizations (i.e., legal entities and the like) because it provides a more specific rule that defines when knowledge "received by an <u>organization</u> is effective for a particular transaction." <u>Id.</u> § 671.201(27). To avoid any confusion, when not quoting directly from Article 4A we refer to corporations, associations, and the like in this opinion as "organizations," and we refer to human beings as "individual persons."

Thus, the proper resolution of this case depends on (1) whether an individual person had actual knowledge of the fact that the Wells Fargo account number identified in Shapiro's payment order actually belonged to Achebe and not to Messenger, or (2) even if no individual person had actual knowledge of the name mismatch, whether Wells Fargo's failure to communicate information from its automated audit trail regarding a potential name mismatch to an individual person means it failed to exercise due diligence and thus should be deemed to have knowledge of the mismatch.

There is no reasonable dispute in this case that no individual person (including the OFAC compliance screener) had actual knowledge of the name mismatch before Wells Fargo approved Shapiro's funds transfer and placed the funds in Achebe's account. Thus, Shapiro will succeed in obtaining a reversal of the district court's grant of summary judgment only if he is able to demonstrate a genuine issue of material fact as to Wells Fargo's failure to exercise due diligence in processing the Shapiro wire. This he cannot do. To begin, the relevant UCC provision expressly provides that, in cases involving payment orders that identify both an account name and an account number, where the bank lacks actual knowledge that the account name and number do not match, the beneficiary's bank (here, Wells Fargo) "may rely on the number as the proper identification of the beneficiary of the order." Fla. Stat. § 670.207(2)(a). Indeed, the beneficiary's

10

bank "need not determine whether the name and number refer to the same person."

Id.  This clear rule statement is explained in great detail in the comments to §

670.207, which, although not binding law, "do occupy an unusual position as aids

to statutory interpretation and should be regarded as an indispensable part of the

UCC framework."  In re Graupner, 537 F.3d 1295, 1301 n.4 (11th Cir. 2008)

(citations and internal quotation marks omitted).  Like the district court, we

consider the following official commentary adopted by the Florida legislature—

which emphasizes the efficiency and certainty rationales at the heart of § 670.207

and other rules found in Article 4A—persuasive in this case:

> A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account.  The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself.  The process is comparable to that used in automated payment of checks.  The standard format, however, may also allow the inclusion of the name of the beneficiary and other information which can be useful to the beneficiary's bank and the beneficiary but which plays no part in the process of payment.  If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost.  Manual handling of payment orders is both expensive and subject to human error.  If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced.  [Section 670.207] allows banks to utilize automated processing by allowing

11

<u>banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons.</u>[8]  "Know" is defined in Section [671.]201(25) to mean actual knowledge, and Section [671.]201(27) states rules for determining when an organization has knowledge of information received by the organization.  The time of payment is the pertinent time at which knowledge or lack of knowledge must be determined.

Although the clear trend is for beneficiary's banks to process payment orders by automated means, Section [670.207] is not limited to cases in which processing is done by automated means.  A bank that processes by semi-automated means or even manually may rely on number as stated in [Section 670.207].

. . . .

. . . <u>Beneficiary's Bank has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order.</u>

Fla. Stat. § 670.207, Official Comment 2 (emphasis added).

Thus, against this backdrop, we must determine whether knowledge of the name mismatch should be imputed to Wells Fargo because it failed to exercise due diligence within the meaning of Fla. Stat. § 671.201(27) by implementing and using an automated funds transfer system that ignores potential name mismatches. Stated in the relevant language of the statute, the question we must answer is did

---

[8] See also First Sec. Bank of N.M. v. Pan Am. Bank, 215 F.3d 1147, 1152 (10th Cir. 2000) (noting that "Article 4A was crafted with the express purpose of creating—in an age of increasing automation—inflexible rules of liability for wire transfer disputes," that "such bright-line rules are necessary so that parties to the millions of annual wire transfers may predict risk with certainty, . . . insure against risk, . . . adjust operational and security procedures, and . . . price funds transfer services appropriately," and that "[t]he efficiency benefits of an automated system are undermined if a bank is not able to rely on its automated system but must independently verify there is no conflict between a beneficiary name and an account number" (alterations in original) (citations and internal quotation marks omitted)).

12

Wells Fargo "maintain[] reasonable routines for communicating significant information to the person conducting the transaction" and then reasonably comply with that routine?

Considering the clear intention of the statute, which is to allow for the automated processing by banks of a large number of payment orders on a daily basis, while reducing both transaction costs and the potential for clerical error, we easily conclude that Wells Fargo maintained and complied with reasonable routines, and thus exercised due diligence, with respect to the processing of Shapiro's payment order through its automated MTS. In reaching this conclusion, we emphasize that § 671.201(27) operates to impute organizational knowledge only when an organization fails to maintain "reasonable routines for communicating significant information" to the person conducting the transaction. In processing the payment order Shapiro originated, it was not unreasonable for Wells Fargo to allow its automated payment system to ignore a potential name mismatch and "rely on the number as the proper identification of the beneficiary of the order." Fla. Stat. § 670.207(2)(a). Indeed, this is expressly allowed by § 670.207(2)(a). See id. ("The beneficiary's bank need not determine whether the name and number refer to the same person."). Because the statute expressly permitted Wells Fargo to do that, we cannot conclude that Wells Fargo failed to maintain a reasonable routine.

13

In adopting the comments to Article 4A, the Florida legislature made it clear that two of the critical considerations embodied in Article 4A were to allow parties to funds transfers "to be able to predict risk with certainty" and "to adjust operational and security procedures." Fla. Stat. § 670.102, Official Comment. And that is exactly what Wells Fargo did in this case. In reliance on the clear rules set forth in Fla. Stat. § 670.207(2), it implemented and used an automated system that processed payment orders on the basis of a matching account number alone, ignoring potential name mismatches automatically reflected in the audit trail. We agree with the district court that Shapiro's "proposed due diligence standard would undermine the express purpose of Article 4A by reinserting human review into a process which is intended to be quick and automated." Accord Fla. Stat. § 670.207, Official Comment 2 ("If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost."). We decline to read such a duty into Article 4A.[9]

---

[9] One can reasonably question the wisdom of the rule (and the allocation of risk) on which Wells Fargo relied in this case, especially in light of the fact that modern technology probably is capable of easily differentiating between a partial mismatch (e.g., John Doe versus Jon Doe) and a complete mismatch (e.g., James Messenger and Chris Achebe). But, that does not change the fact that Wells Fargo is entitled to rely on the rule as it now exists, and arguments

14

Nor are we persuaded by Shapiro's argument that Wells Fargo's OFAC screening creates factual issues that should preclude summary judgment. We have already concluded that Wells Fargo, as an organization, did not fail to act with the due diligence required by Article 4A of the UCC by allowing its automated MTS to process Shapiro's funds transfer without escalating information relating to a possible name mismatch to an individual person for review (including the OFAC screener or any other Wells Fargo personnel). It is also undisputed that the OFAC screener did not have actual knowledge of the potential name mismatch because he reviewed only the original payment order (and not the information generated by the MTS audit trail). Consequently, Wells Fargo still did not fail to act with due diligence in this case because the OFAC screener did not have any material information regarding the name mismatch to "communicate" to other individual persons at Wells Fargo in any event. See Fla. Stat. § 671.201(27) ("Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information."); see also id. § 670.207(2)(a) ("The beneficiary's bank need not determine whether the name and number refer to the

that certain provisions of Article 4A are unwise or lead to unjust results are for the Florida Legislature and not this Court to consider.

15

same person."); id. § 670.207, Official Comment 2 ("A bank that processes by semi-automated means or even manually may rely on number as stated in Section [670.207].").

Finally, Shapiro did not allege below—and has not clearly argued on appeal with appropriate citations to the record and relevant authority—that Wells Fargo's screening procedures violated any specific statute, regulation, or rule relating to the OFAC sanctions program.  Instead, Shapiro argues generally that "[a] fact-finder might well determine that OFAC screening should reasonably be applied to the [credit] party, in which case 'due diligence' would require that the information with regard to the name on the account be included in the OFAC screening process."  This argument is not enough to overcome summary judgment.  No reasonable fact finder could conclude that Wells Fargo failed to act with due diligence under Article 4A because a limited screening intended to comply with the regulatory requirements of an entirely different body of law did not reveal the name mismatch, especially when it is not clear that Wells Fargo failed to adhere to any particular OFAC requirements in any event.[10]  We therefore decline to disturb

---

[10] We also note that the Code of Federal Regulations has adopted substantially all of Article 4A of the UCC, including provisions relating to the misdescription of a beneficiary's bank.  Like Florida law, these regulations provide that "[t]he beneficiary's bank need not determine whether the name and number refer to the same person."  12 C.F.R. § 210.25(b)(1); Appendix B to 12 C.F.R. Ch. II, Subch. A, Pt. 210.  These federal regulations apply to Shapiro's funds transfer because it was processed through Fedwire.  See 12 C.F.R. § 210.25(b)(2)(v).  To the extent that OFAC requirements might be read to create affirmative due diligence obligations

on appeal the district court's disposition of Shapiro's claims under Article 4A of the UCC on the basis that the OFAC screener potentially could or should have discovered the potential name mismatch.

*B. The district court did not err in granting Wells Fargo's motion to dismiss Shapiro's common law negligence claims or in denying Shapiro's subsequent motion to amend its complaint to state an expanded negligence claim.*

Shapiro also argues on appeal that the district court erred (1) by granting Wells Fargo's motion to dismiss its common law negligence claim on grounds that the claim was preempted by the statutory scheme set forth in Article 4A of the UCC, and (2) by denying Shapiro's motion to amend its complaint to add a new claim for negligence some four months after the scheduled amendment deadline passed.  We conclude that the district court did not err in reaching either conclusion.

First, with respect to the preemption issue, the district court did not err when it concluded that Article 4A preempted Shapiro's common law negligence claim because Shapiro's initial complaint alleged no negligence beyond the scope of the erroneous funds transfer.  Given the scope of those allegations, Article 4A specifically (and thus exclusively) defines the duties, rights, and liabilities of the

---

under Article 4A in this case, Florida state law and federal regulations specifically addressing the rights, duties, and obligations of the parties in cases involving a misdescribed beneficiary in a payment order (including, in particular, that a beneficiary's bank may rely on the account number without regard to the account owner's name under most circumstances) must take precedence and serve as our guideposts in this case.

17

parties in the misdescription-of-beneficiary situation presented by this case.  See Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1274–75 (11th Cir. 2003) (observing that Article 4A was "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by the particular provisions of the Article" and concluding that "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated" in Article 4A); Corfan Banco Asuncion Paraguay v. Ocean Bank, 715 So. 2d 967, 971 (Fla. 3d DCA 1998) (agreeing with trial judge in case involving correctly identified beneficiary but incorrect account number that Article 4A preempted plaintiff's negligence claim where "[t]he duty claimed to have been breached by [the bank] in its negligence count is exactly the same duty established and now governed by [Article 4A]").  Thus, we disagree with Shapiro's argument that common law negligence principles are consistent with, and should supplement, the relevant provisions of Article 4A in this case. Shapiro's initial complaint clearly alleged that Wells Fargo breached duties with respect to the erroneous funds transfer that are significantly broader than—and thus inconsistent with—the duties stated in Fla. Stat. § 670.207(a) (i.e., Shapiro alleged that Wells Fargo had a duty to refuse to accept the wire or freeze the funds because, even though the payment order identified the correct account number, it also included a misdescribed beneficiary).  Under the particular circumstances of

18

this case, the district court was correct to conclude that Article 4A preempted the common law negligence claim set forth in Shapiro's initial complaint.

Second, with respect to Shapiro's claim that the district court abused its discretion by denying its motion to amend its complaint to allege a broader negligence claim relating to Wells Fargo's acts or omissions before the erroneous funds transfer, we find no clear error, and thus no abuse of discretion, in the judgment of the district court. "We have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011); accord Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002) (agreeing with "the district court's conclusion that, in order to ensure the orderly administration of justice, [the district court had] the authority and responsibility to set and enforce reasonable deadlines"). Moreover, we have also noted that district courts have "great discretion when deciding whether to grant a motion for leave to amend a complaint following the filing of responsive pleadings." Lowe's Home Centers, 313 F.3d at 1314–15; see also Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 470 F.3d 1036, 1041 (11th Cir. 2006) (denying motion to amend because, inter alia, plaintiffs "did not move to amend their complaints until after the district court denied a motion to dismiss").

19

Here, the district court's April 19, 2018 scheduling order set the cut-off date for amending pleadings at May 18, 2018 and required discovery to be completed by September 21, 2018. Shapiro filed a motion to amend its pleadings on September 14, 2018. This date is some five months after Wells Fargo answered Shapiro's complaint, nearly four months after the cut-off date for amending pleadings, and only one week before the parties were supposed to have completed discovery. Although it is true that Wells Fargo resisted many of Shapiro's initial discovery requests on attorney-client privilege, work product, and other non-frivolous legal grounds (thus extending discovery proceedings past the cut-off date for amending pleadings), we cannot conclude that the district court clearly abused its discretion in this case when it decided that Shapiro had not shown good cause to avoid enforcement of the district court's scheduling order, which clearly indicated a cut-off date for amending pleadings at May 18, 2018.

This is especially true here because Wells Fargo had already answered Shapiro's complaint and the district court had even granted Wells Fargo's motion to dismiss Shapiro's initial negligence claim from the original complaint. See Fla. Evergreen Foliage, 470 F.3d at 1041; Lowe's Home Centers, 313 F.3d at 1314–15. Moreover, Shapiro did not adequately explain to the district court—and has not adequately explained on appeal—why it could not have stated a broader and legally plausible claim for negligence in its original complaint without the factual

20

information regarding the Achebe account eventually revealed by Wells Fargo before the close of discovery.[11]  For example, even though Shapiro's original complaint included a factual allegation that "the WELLS FARGO bank account had been opened in the name of 'Chris Achebe,' presumably as part and parcel of the fraudulent scheme," Shapiro's original negligence count clearly focused only on Wells Fargo's alleged breach of one or more common law duties relating to its handling of the erroneous funds transfer at issue in this case—and not with respect to Wells Fargo's breach of any common law duties relating to its opening or maintenance of the Achebe account prior to that funds transfer.  Because the district court did not clearly abuse its discretion in denying Shapiro's untimely motion to amend to avoid having to reset and restart the entire case timeline shortly

---

[11] It likely would have been futile to do so in any event because even Shapiro recognizes that "the general rule is that a bank does not generally have a duty to monitor its customers' accounts for the benefit of third parties."  Appellant's Br. 34 n.13.  Accord Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1094 (11th Cir. 2017) ("Florida, like other jurisdictions, recognizes that as a general matter, a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship." (citations and internal quotation marks omitted)).  Although this could serve as another basis for our holding that the district court did not commit reversible error in this case, see Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (noting that "[a] proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed" (citation and internal quotation marks omitted)), we decline to fully explore this issue for two reasons.  First, the district court did not address the issue in its order denying Shapiro's motion to amend, and our standard of review with respect to the futility issue is de novo (not abuse of discretion).  See Cockrell, 510 F.3d at 1310.  Second, it is clear to us that the district court's stated reasons for denying the motion (i.e., avoiding litigation delay and enforcing the terms of its scheduling order) did not constitute clear and reversible error.

before the close of discovery, we decline to disturb the district court's decision on appeal.

## IV.  CONCLUSION

The district court did not err when it dismissed Shapiro's original common law negligence claim because the specific provisions of Article 4A regarding the misdescription of a beneficiary's bank preempt Shapiro's common law negligence claim in this case.  Nor did the district court err in later denying Shapiro's motion to amend its complaint to state a broader negligence claim.  It was not clear error, and thus not an abuse of discretion, for the district court to deny the motion to amend to avoid significant litigation delay at a late stage in the proceedings, especially in light of Shapiro's failure to adequately explain to the district court why information revealed late in discovery was a necessary prerequisite to its ability to state a broader negligence claim earlier in the litigation.  Finally, the district court did not err when it granted Wells Fargo's motion to dismiss Shapiro's claims under Article 4A because § 670.207 clearly indicates that Wells Fargo was, under the circumstances presented in this case, entitled to use its automated payment system to process Shapiro's wire on the basis of a valid account number alone (without regard to a possible mismatch between the intended beneficiary and the actual credit party detected by an automated payment system and noted in that

22

system's audit trail).  The judgment of the district court granting Wells Fargo's

motion for summary judgment and dismissing Shapiro's claims is therefore

AFFIRMED.[12]

---

[12] Any other arguments asserted on appeal by Shapiro are rejected without need for further discussion.